ARTHUR B. HEADLEY, Respondent, *v.* THE CITY OF ROCHESTER, Appellant.

(Argued October 9, 1936; decided November 24, 1936.)

*Harold P. Burke, Corporation Counsel* (*Abraham Edelstein* and *Charles B. Forsyth* of counsel), for appellant.

*Robert T. Headley* for respondent.

LEHMAN, J.   The plaintiff since 1918 has been the owner of premises in the city of Rochester which are bounded on the south by East avenue and on the west by North Goodman street.   East avenue and North Goodman street have been, for more than twenty years, public streets or highways.   In 1931, pursuant to article 3 of the General City Law (Cons. Laws, ch. 21), the Council of the city of Rochester passed an ordinance which amended, changed and added to an official map or plan previously adopted by the Council " so as to correct and revise said established Official Map or Plan and to lay out new streets and highways and to widen existing highways."   In that map or plan the southerly twenty-five feet of plaintiff's said prem-

ises are included in East avenue, as widened, and a strip of plaintiff's premises extending along its westerly edge is included in North Goodman street, as widened. The plaintiff has brought an action to obtain a judgment •declaring " that the ordinance and map and plan adopted by the said City of Rochester as aforesaid is unconstitutional and void." At Special Term the complaint was dismissed. The Appellate Division reversed and granted judgment " declaring that the ordinance, map and plan herein involved, are void and ineffectual to create any limitations or restrictions upon the use or conveyance of plaintiff's property."

By chapter 690 of the Laws of 1926 the Legislature added article 3, entitled " Official Maps and Planning Boards," to the General City Law. That article empowers the legislative body of every city to establish an official map or plan of the city showing the streets, highways and parks theretofore laid out and established by law. (§ 26.) It empowers such legislative body "whenever and as often as it may deem it for the public interest, to change or add to the official map or plan of the city so as to lay out new streets, highways or parks, or to widen or close existing streets, highways or parks." (§ 29.) It further empowers the legislative body of the city to create a planning board of five members and it requires that before making any addition or change in an official map in accordance with section 29 " the matter shall be referred to the planning board for report thereon." The planning board is given "power and authority to make such investigations, maps and reports and recommendations in connection therewith relating to the planning and development of the city as to it seems desirable." (§ 31.)

The adoption or revision of a general map pursuant to the provisions of the General City Law does not have the effect of divesting the title of the owner of land in the bed of a street as shown on the map; it does not have the effect of placing upon the city a duty to begin, presently,

condemnation proceedings to acquire such land. Article 3 of the statute provides the machinery for intelligent planning in advance for the needs of the city as the city is expected to grow in the future. Only time can prove whether the city has wisely gauged the future, and the city is under no compulsion to open any street shown on the map unless and until the legislative body of the city decides that it is actually needed.

The mere adoption of a general plan or map showing streets and parks to be laid out or widened in the future, without acquisition by the city of title to the land in the bed of the street, can be of little benefit to the public if the development of the land abutting upon and in the bed of the proposed streets proceeds in a haphazard way, without taking into account the general plan adopted and, especially, if permanent buildings are erected on the land in the bed of the proposed street which would hamper its acquisition or use for its intended purpose. So long as the owners of parcels of land which lie partly in the bed of streets shown on such a map are free to place permanent buildings in the bed of a proposed street and to provide private ways and approaches which have no relation to the proposed system of public streets, the integrity of the plan may be destroyed by the haphazard or even malicious development of one parcel or tract to the injury of other owners who may have developed their own tracts in a manner which conforms to the general map or plan.

A statutory requirement that a city must acquire title to the land in the bed of the streets shown on the general map or plan, and provide compensation for the land taken, would create practical difficulties which would drastically limit, if, indeed, they did not render illusory, any power conferred upon the city to adopt a general map or plan which will make provision for streets which will be needed only if present anticipations of the future development of the city are realized. On the other hand, to leave the land in private ownership, and, without compensation to

the owner, incumber it with restrictions upon its use which would result in diminution in its value might be inequitable and perhaps even beyond the power of the State. To meet the difficulty, the Legislature has provided in section 35 of the General City Law that " for the purpose of preserving the integrity of such official map or plan no permit shall hereafter be issued for any building in the bed of any street or highway shown or laid out on such map or plan, provided, however, that if the land within such mapped street or highway is not yielding a fair return on its value to the owner, the board of appeals or other similar board in any city which has established such a board having power to make variances or exception in zoning regulations shall have power in a specific case * * * to grant a permit for a building in such street or highway which will as little as practicable increase the cost of opening such street or highway, or tend to cause a change of such official map or plan, and such board may impose reasonable requirements as a condition of granting such permit, which requirements shall inure to the benefit of the city." The sole complaint of the plaintiff is that so long as that section remains in force the effect of the ordinance adopted by the city is to restrict the use to which the plaintiff may put his land in the bed of the street and to that extent constitutes a taking of his property, and that, since the city is not required to pay any compensation to him unless or until at some time in the indefinite future it may choose to take title to the land, the effect of the ordinance is to deprive him of his property without due process of law.

Not every restriction placed by authority of the State upon the use of property for the general welfare of the State, without payment of compensation, constitutes a deprivation of property without due process of law. This court has sustained a reasonable restriction upon the height of signs on roofs, saying: " Compensation for such interference with and restriction in the use of property

is found in the share that the owner enjoys in the common benefit secured to all." (*People ex rel. Wineburgh Adv. Co.* v. *Murphy*, 195 N. Y. 126, 131.) Under the provisions of the General City Law the owner of land in the bed of the street shown in a map remains as free to alien the land or to use it as he sees fit as he was before the map was adopted, except in one respect. If he desires to improve the property by erecting a building for which a permit is required, the grant of such a permit is surrounded by drastic conditions or restrictions which will in many cases act as an obstacle to such use of the land.

In *Junius Constr. Corp.* v. *Cohen* (257 N. Y. 393, 399), though the appellant attempted to question the constitutionality of section 35 of the General City Law, we placed our decision on other grounds and said: " We find it unnecessary to determine whether section 35 with its restrictions upon the enjoyment of the land within the boundaries of a mapped street is an unconstitutional interference with vested rights of property. (Cf. on the one hand, *Forster* v. *Scott*, 136 N. Y. 577; *Matter of Wall Street*, 17 Barb. 617, 636; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Priest*, 206 N. Y. 274; *Edwards* v. *Bruorton*, 184 Mass. 529; and on the other hand, *Matter of City of New York*, 196 N. Y. 255; *Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288; *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365.) " Though the section has been on the statute books since 1926, its validity has not been challenged in any other case in this court. It is perhaps not without significance that during these years no owner has claimed that the statute has actually interfered with his enjoyment of the land, or has prevented him from obtaining a permit to improve the land in a manner which he deemed desirable.

The plaintiff in this case, too, makes no such claim. The complaint alleges only the conclusion of the pleader that by reason of the filing of the ordinance and map or plan " the plaintiff has been, and is, deprived of his

property without the payment of compensation therefor." The complaint is silent as to how the plaintiff is injured by the ordinance and the map. The stipulation of facts upon which the case was submitted for decision again fails to indicate in what manner the ordinance has caused damage to the plaintiff or interferes with any use to which the plaintiff desires to put the land. On the contrary, it appears from the stipulated facts that " the plaintiff has at present no plans for the use of said premises nor any particular desire as to the purposes for which he expects to use the same " and " that the plaintiff, because of the claim of the defendant under said ordinance and map, is undecided as to whether he shall endeavor to build upon said premises or endeavor to sell the same." It may be added, incidentally, that the stipulated facts fail to show that there is at present any actual controversy with the city as to the use to which the property may be put, and it appears " that the plaintiff has made no application to the Planning Board, Board of Appeals or Supervisor of Zoning of the City of Rochester for a permit to use those portions of his property included in said map as widened streets or to build thereon or to alter any existing structures therein."

Regardless of the form of action in which relief is sought, the courts will not declare a statute unconstitutional unless and until such relief is necessary for the protection of some right of the suitor guaranteed by the Constitution. " The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it." (*California* v. *San Pablo & Tulare R.R. Co.*, 149 U. S. 308, 314.) " To complain of a ruling one must be made the victim of it. One cannot invoke to defeat a law an apprehension of what might be done under it and, which if done, might not receive judicial approval." (*Lehon* v. *City of Atlanta*, 242 U. S. 53, 56.)

The courts have sustained, as a proper exercise of the

police power, restrictions in zoning ordinances upon the use of land in defined districts which go so far as to require that all buildings be set back a specified distance from the street. (*Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288.) There the restrictions were imposed to promote the general welfare and to protect the public health and safety. Here it may be urged that the restrictions, though less drastic, also affect less directly, if at all, the general welfare or the public health and safety. Even if some doubt may remain whether the State has power to impose present restrictions upon the use of land in the bed of a street as shown on an official map or plan, without compensation for the damage caused to the owner of land by reason of such restrictions, there can be no doubt that such restrictions are calculated to promote at least the public convenience if not the public health, and to benefit the district in which the land is situated, as well as the city itself; and that in so far as such restrictions may constitute a taking of property, the taking would be for a public purpose and would accord with " due process of law " if compensation were paid for the consequent damage. Since the plaintiff's alleged grievance is that he has been deprived of his property without compensation, the grievance becomes illusory if it does not appear that damage has been done to him by the city's acts.

A statute cannot have the effect of depriving a person of his liberty or property unless it prevents such person from doing an act which he desires to do or diminishes the enjoyment or profit which he would otherwise derive from his property. (Cf. cases collated in the separate opinion of Mr. Justice BRANDEIS in *Ashwander* v. *Tennessee Valley Authority*, 297 U. S. 288, at pp. 345–349.) There are approximately nineteen thousand feet in the plot owned by the plaintiff. The single dwelling house upon it is ninety-five years old and is now in course of demolition. By its adoption of the general map or plan, the city has given notice that at some future time, if

present anticipations are realized, it intends to widen the two streets upon which the plaintiff's property abuts. If without building upon the strips of his land which may in the future be included in the widened streets, the plaintiff's property cannot be developed in manner which the plaintiff desires or which would best conduce to the enjoyment or profit which an owner might derive from his land, and if it were shown that the statute, if valid, would require or even justify a denial of a permit for such development, the adoption of the map might constitute a grievance. In the absence of proof of such facts, it is difficult to see how the plaintiff has been deprived in any manner of the use of his property. Before the court should even consider the question of whether the Legislature could under the police power restrict, without compensation, the use of land in private ownership, there should be proof at least that the statute is in some manner interfering with or diminishing the value of the present property rights of the person complaining. (Compare in this respect the allegations contained in the complaint upon which the Supreme Court of the United States based its jurisdiction to consider such question in *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 368, 374.)

The opinion of the Appellate Division leans heavily upon *Forster* v. *Scott* (136 N. Y. 577) as authority for its decision. The analogy between the cases is quite illusory and the principles here involved are not touched by that case. There the city of New York, in accordance with the provisions of chapter 681 of the Laws of 1886, filed a map of a proposed street or avenue which as the court pointed out " *covers the entire lot* " of the plaintiff. The statute provided that " no compensation shall be allowed for any building, erection or construction which at any time, subsequent to the filing of the maps, plans, or profiles mentioned in section six hundred and seventy-two of the act, may be built, erected or placed in part or

in whole upon or through any street, avenue, road, public square or place exhibited upon such maps, plans or profiles." (p. 582.) The plaintiff made a contract to sell his land to the defendant. He agreed to convey a good title to the land " in fee simple free from any lien or encumbrance." The defendant refused the title, claiming that the filing of the map created an incumbrance upon the property. The validity of the title was submitted to the court upon stipulated facts. It appeared from them that no building was erected on the plaintiff's land and " the same is a vacant lot which derives almost its entire value from the possibility of being used for building purposes. If the lot cannot now be built upon without the house being destroyed, without compensation in the event of the street being opened as prescribed by the statutes above set forth, the lot is not worth what defendant agreed to pay, whereas if it can be used for building purposes it is worth at least $5,000." In other words, the statute purported to give the city the right at some indefinite time in the future to appropriate the land of the plaintiff shown on the map without paying for it the value it would then have if, pending such appropriation, its owner chose to improve it for the only purpose for which it had substantial value.

. The court there said: "An encumbrance is said to import every right to or interest in the land, which may subsist in another, to the diminution of the value of the land, but consistent with the power to pass the fee by a conveyance." (p. 582.) If the statute was valid the land " could not be used for building purposes, except at the risk to the owner of losing the cost of the building at some time in the future." (p. 583.) The value of the land was derived from its availability for building purposes and that value would be drastically reduced if the owner could not obtain compensation for the improvements put upon the land. Since these facts were stipulated it could hardly be doubted that the statute attempted to create a public

right or interest in the land which diminished its value and would, therefore, constitute an incumbrance as defined by the court. Then in an action between vendor and vendee under a contract of sale, the court was bound to pass upon the validity of the statute.

Every element which led the court to find in that case that the filing of the map, in accordance with the statute there challenged, created, if the statute were valid, an incumbrance upon the property, is wanting in the case now under review. The statute here does not purport to give to the city the right to appropriate the plaintiff's land or any part of it for less than the full value of the lands with the improvements thereon erected at the time of such appropriation. The only restrictions upon the use of any part of the plaintiff's land while title thereto remains in the plaintiff result indirectly from the conditions which the statute attaches to the grant thereafter of a permit to erect a building upon the small portion of plaintiff's land which, as shown on the map, will lie in the bed of the street on which the plaintiff's land abuts, if or when at some time in the future the city may desire to carry out its intention to widen the street. Since it is affirmatively shown that the plaintiff has no plans at present for the use of the premises it seems plain that what this court said and decided in the case of *Forster* v. *Scott* (*supra*) cannot possibly be regarded as any precedent for the grant of a judgment declaring the statute invalid, unless from the facts here presented the court as matter of law would be constrained to draw the inference that the conditions which the Legislature has sought to impose upon the grant of a permit for the use of a small part of plaintiff's land, creates a limitation upon its use " to the diminution of the value of the land."

No inference of law, indeed no inference of fact, that the attempted condition has affected or will affect the use to which the plaintiff's land will be put or has diminished the value of the land, may be drawn from the stipu-

lated facts. There is no suggestion that a plot of nineteen thousand square feet cannot be suitably improved and put to the most profitable use by the erection of a building which does not encroach upon the small portions which may be used hereafter to widen the street. Sometimes land owners in a particular district assume mutual obligations to set back buildings some distance from the streets. Sometimes such obligations are imposed by zoning ordinance. Sometimes an owner does so voluntarily because he believes that such a setback is the best use for the land immediately abutting on the street. The plaintiff or any successor in title to the property could use the land within the bed of the widened street for such purpose even without a permit. It may be the best use to which that land could be put, even if no map had been adopted, and there were no probability that the city would in time widen the street. Certainly it cannot be said that owners of property do not receive any benefit from the adoption of general maps or plans for the development of city streets, if they can develop their land with some assurance that other owners will not be permitted to frustrate the plan, maliciously or unreasonably. Whether the State may impose conditions for the issuance of permits in order to protect the integrity of the plan of a city where it appears that such conditions interfere with a reasonable use to which the land would otherwise be put or diminishes the value of the land, should not now be decided. Without proof that the imposition of such conditions has deprived an owner of land of some benefit he would otherwise derive from the land, there can be no deprivation of property for which compensation should be made.

Solicitude for the protection of the rights of private property against encroachment by government for a supposed public benefit does not justify the courts in declaring invalid a public law which serves a public purpose, because ten years after it has been on the statute

books a single owner, without proof, or even claim, of actual injury, asserts that he has been deprived of his property.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.