In the Matter of the Application of the CITY OF NEW YORK Relative to Acquiring Title to the Real Property Required for the Widenings of Southern Boulevard from East 138th Street to Whitlock Avenue; Whitlock Avenue from Southern Boulevard to Leggett Avenue and from Hunts Point Avenue to Eastern Boulevard, etc., in the Borough of the Bronx, City of New York. SERVICE DINERS, INC., Appellant; THE CITY OF NEW YORK, Respondent.

First Department, June 18, 1941.

*Bernard Cohen*, for the appellant.

*Joseph F. Mulqueen, Jr.*, of counsel [*Julius Isaacs* with him on the brief; *William C. Chanler, Corporation Counsel*, attorney], for the respondent.

CALLAHAN, J. On March 16, 1931, the city of New York filed a map showing a proposed widening and change of grade of Whitlock avenue in the borough of the Bronx. Thereafter and on March 27, 1931, said map was duly adopted.

On September 18, 1933, the board of estimate and apportionment of the city of New York authorized the widening of Whitlock avenue. No step was taken, however, to complete the widening or to condemn the strips of land which would be taken for that purpose until June 27, 1938, when title to said strips was vested in the city. In the meantime, however, and in the latter part of the year 1937 the

claimant herein, pursuant to a permit granted to it by the department of buildings of the borough of Bronx on September 20, 1937, erected a building known as a " diner " on a lot at the corner of One Hundred and Forty-ninth street and Whitlock avenue, at a point within the area of the proposed widening. The claimant had obtained a sublease of the land upon which the diner was erected from one Weinstock, who was the tenant of the owner of the fee, the New York, New Haven and Hartford Railroad Company.

The record indicates that after condemnation the city of New York took possession of the diner and prevented the officers of the claimant from removing anything but the furnishings contained therein. Upon the hearing in condemnation, the claimant proved the value of the diner, without contradiction by the city.

Although the evidence on the subject is somewhat meagre, it appears that this diner had been on another portion of Whitlock avenue, in the neighborhood of One Hundred and Thirty-fifth street, which had been the subject of a prior condemnation, and that the court in that condemnation proceeding had refused to allow claimant any damages for the building because it was put on after the map showing the widening of the street had been filed. It was stated on the trial and is represented in the briefs by the corporation counsel, that the diner involved herein was then removed to its site at One Hundred and Forty-ninth street. If these statements are true, it would seem that the city must have permitted the removal of the structure at the time of the first condemnation.

It appears further from the record that the present owner of the capital stock of the claimant did not know of the history of the diner, or of the prior condemnation proceedings. He purchased the corporate stock of the claimant from the former owner thereof, after a consultation with a representative of the owner of the fee, who advised him that he knew of no definite plan by the city to complete condemnation. The brief of the corporation counsel concedes that the present owner of the claimant's stock acted in good faith in the matter.

Special Term held that the claimant could obtain no damage because it had violated the provisions of section 35 of the General City Law, in that it had placed the diner on the proposed widened area without receiving permission of the board of standards and appeals of the city of New York. It ruled that the department of buildings of the city of New York had no power to issue a permit, and that it was the duty of said department to deny such a permit.

Appellant contends that it is entitled to just compensation for its property, that owners of other structures within the widened

area erected after 1933 had been paid damages, and that to construe section 35 of the General City Law so as to permit the taking of such property without such compensation would be to make the statute unconstitutional.

Section 35 of the General City Law is part of article 3 of that law, which was adopted in 1926. The statute provides a scheme for the adoption of an official city map or plan and section 35 provides that for the purpose of preserving the integrity of such map or plan no permit shall be issued for any building in the bed of any street as laid out on said map or plan, unless the owner first obtains permission from the board of standards and appeals or similar board of any city wherein such a board has been established. To obtain such permit the owner is required to show that he is unable to obtain a fair income from the property without the proposed improvement. The statute further provides that the board of standards and appeals is to so act that any improvement which is permitted will as little as practicable increase the cost of condemnation.

The constitutionality of this statute was attacked in an action for declaratory judgment in the case of *Headley* v. *City of Rochester* (272 N. Y. 197). The Court of Appeals, without passing on the question of constitutionality, refused to grant judgment to plaintiff because it said that he had suffered no damage; that there was no threat of a taking of any of his property rights and no proof that he had intended to build.

We are assuming that the map of Whitlock avenue which was altered in 1933 was an official map duly adopted pursuant to the provisions of article 3 of the General City Law and that a certificate as to its establishment was duly filed. (See General City Law, § 26; *Junius Construction Corp.* v. *Cohen*, 257 N. Y. 393.)

We proceed on this assumption to consider the legality of the steps taken by claimant in erecting the diner.

The provisions of law existing in 1937 with respect to the powers and jurisdiction of the board of standards and appeals of the city of New York were found in the former Greater New York Charter, sections 718–719-b, inclusive. The jurisdiction afforded to said board was two-fold: (1) Original jurisdiction with respect to the testing of materials and setting of standards, and the making of rules with respect thereto; and (2) hearing of appeals from decisions of a superintendent of buildings. No original jurisdiction to pass upon proposed building plans appears to have been conferred on said board under the charter.

The circumstances under which the present claimant applied to the department of buildings do not appear in the record. In any

event the department of buildings in each borough was the only department authorized by the charter to pass upon proposed building plans. (See Greater New York Charter, §§ 405–416-a, inclusive.) The claimant, having obtained approval from the department of buildings, was not in a position to appeal to the board of standards and appeals.

Assuming that section 35 of the General City Law conferred original jurisdiction on the board of standards and appeals of the city of New York to pass on a plan such as the one which was filed in the present case, we do not think that the circumstance that the permit which was issued to claimant was irregularly issued would make the structure illegal, nor would it preclude the claimant from receiving just compensation for any damage it might sustain if the city not only condemned but appropriated its building. If the statute be otherwise construed, we think that it would deprive the claimant of property without due process of law and be an unconstitutional exercise of the legislative power.

In *Headley* v. *City of Rochester* (*supra*) the Court of Appeals said: " The statute here does not purport to give to the city the right to appropriate the plaintiff's land or any part of it for. less than the full value of the lands with the improvements thereon erected at the time of such appropriation."

In *Matter of City of New York* (196 N. Y. 255) an award was made to a claimant who had placed a building on a widened area after the filing of a map. At first all damages had been refused on the ground of bad faith on claimant's part, but on appeal the determination was reversed and the court directed rehearing and award of just compensation. On rehearing, the claimant was allowed an award, but he appealed on the ground of insufficiency. The Court of Appeals then affirmed the award and stated concerning the effect of the filing of the map: " The ordinary use of property sought to be condemned is not prevented by the commencement of such a proceeding. This court has held that to prohibit the allowance to the owner of land taken for a street, of any amount for a building erected or placed thereon after the filing of a map of the street as prescribed by a municipal charter, imposes a restriction upon the use of land which amounts to an incumbrance and so is unconstitutional. (*Forster* v. *Scott*, 136 N. Y. 577.) When the property is taken, the compensation should be just to the owner, but it should also be just to the public."

It must be remembered that the foregoing statement was made despite a finding of bad faith. In admeasuring damages the court treated the structure as if it were personal property. It held that the measure of damages was the cost of removing the building from

the lot. Whether this would be the correct rule and measure of damages in all cases where property has been erected in a proposed widened area after the filing of a map is not the question presented to us. Here the question is whether claimant is entitled to any compensation. We think that if the city appropriated the structure after condemnation, a right to some damage would exist. A new trial should be had to ascertain all of the facts and circumstances connected with the taking.

The final decree, in so far as appealed from, should be reversed, with costs, and a rehearing granted.

MARTIN, P. J., UNTERMYER, DORE and COHN, JJ., concur.

Final decree, so far as appealed from, unanimously reversed, with costs, and a rehearing granted.

Settle order on notice.