Daniel E. Macken, J.
This action was tried before the late Mr. Justice George D. Newton. Following the death of Justice Newton, the parties by their attorneys stipulated that the action be decided by me on the record of that trial.
Plaintiff Franklin-Andrews Corporation (hereafter called Franklin-Andrews) owns a piece of property on the south side of Court Street extending from Chestnut Street to Cortland Street in the City of Rochester. Plaintiff R. B. I. Enterprises, Inc. (hereafter called R. B. I.) owns a parcel adjoining to the south. The combined parcels constitute a plot having an area of approximately 40,000 square feet. In 1962 R. B. I., then named Rochester Business Institute, Inc., leased the Franklin-Andrews parcel for a term of 50 years at an annual net rental of $15,000 with an option to buy it by September 1, 1967 for $300,000. The R. B. I. property was almost completely occupied by a roller skating rink and it was the intention of R. B. I. to construct a building substantially on the Franklin-Andrews parcel which, when connected to and used in conjunction with the existing structure on the R. B. I. property, would house the facilities of the Rochester Business Institute and provide rental office space.
In 1930 the Council of the City of Rochester adopted an ordinance commonly known as the Bartholomew Major Street Plan establishing an official map or plan providing for certain new streets and the widening of certain existing streets. Among the latter and incorporated in the official map was a 30-feet widening of Court Street including the portion adjoining the Franklin- *528 Andrews property. The entire proposed widening was on the south side of the street and extended 30 feet into the FranklinAndxews property. Eelatively few of the changes contemplated by the 1930 ordinance have been effected. Large portions of the plan have been modified or eliminated by ordinance or practically abandoned by permitting construction within the proposed street beds. No steps have been taken to widen Court Street.
In November, 1962 E. B. I. retained an architect to prepare plans for the proposed structure disregarding the 30-feet setback required by the 1930 ordinance and on July 10, 1963 plaintiffs filed with defendant’s Building Bureau plans for the construction of a 10-story building fronting on Court Street and extending substantially to the Court Street property line including the mapped area of the proposed widening.
Section 35 of the General City Law directs that no permit be issued for a building in the bed of a street or highway shown or laid out on the official map or plan of a city ‘ ‘ provided, however, that if the land within such mapped street or highway is not yielding a fair return on its value to the owner, the board of appeals or other similar board in any city which has established such a board having power to make variances or exception in zoning regulations shall have power in a specific case by the vote of a majority of its members to grant a permit for a building in such street or highway which will as little as practicable increase the cost of opening such street or highway, or tend to cause a change of such official map or plan, and such board may impose reasonable requirements as a condition of granting such permit, which requirements shall inure to the benefit of the city.”
Because of the encroachment on the proposed street bed, plaintiffs’ application for a permit was denied. Thereupon plaintiffs appealed to the Zoning Board of Appeals and following a hearing held September 5, 1963 the board on September 26 approved the application on condition that the building be set back 14 feet from the existing Court Street line. In the meantime and on September 10 a proposed ordinance had been introduced in the City Council amending the 1930 ordinance by providing for a proposed 14-feet widening of Court Street instead of the 30 feet contained in the original ordinance. The ordinance so amending the official map and plan was adopted October 8, 1963. Obviously the board’s imposition of the 14-feet setback was not a discretionary relaxation of the 30-feet widening provision but rather a recognition by the board of the recommendation of the Planning Commission which it was aware was about to be adopted by the Council.
*529 In this action the plaintiffs allege that the ordinances heretofore described and the defendant’s refusal to permit them to build on the 14-feet proposed street bed constitute an appropriation of their property without just compensation or due process of law and are violative of the Constitutions of the United States and the State of New York. They seek a judgment so declaring and directing the defendant to issue a permit for construction within the mapped street bed. While section 35 of the General City Law provides that a decision of the Board of Appeals is subject to review by certiorari, defendant has not questioned the form of this action. (Rand v. City of New York, 3 Misc 2d 769, 772.)
The defendant in its memorandum concedes that plaintiffs in good faith intend to construct a combination school and office building on the site and that they have the ability to finance the construction and obtain leases when the structure has been completed. I so find. The memorandum further states: “ There appears to be no doubt that the effect of the City’s official Street Map is to some extent lessen the value and limit the free and independent use of plaintiffs’ property.”
Defendant contends that plaintiffs can, without substantial damage, construct a building adequate for their needs without utilizing the proposed street bed and that the principal purpose of this litigation is to force the city to acquire that area now rather than whenever the city determines to actually widen the street.
The defendant also takes the position that the standards governing the constitutionality of zoning ordinances should be applied to this case and that it has not been shown that without the 14-feet strip, the property cannot be put to a use which will afford plaintiffs a reasonable return. It is the city’s position that preventing plaintiffs from putting the property to its best and most profitable use wpuld not render its actions unconstitutional.
With respect to the latter contentions, this is not a zoning case. (Scarsdale Supply Co. v. Village of Scarsdale, 8 N Y 2d 325, 329.) If considered as a zoning ordinance, it would be patently discriminatory. “That a zoning statute must be impartially applied as to all property similarly situated is beyond dispute.” (1 Rathkopf, Law of Zoning and Planning [3d ed.], 1964 Supp., p. 58). The proposed widening of Court Street will be of little, if any, direct benefit to the plaintiffs aside from the general benefit to be derived from the free flow of traffic in the downtown area. It certainly affords properties on the south side of the street no greater benefit than those on the *530 north side which are not incumbered by the proposed widening ordinance. ‘‘ However compelling and acute the community traffic problem may be, its solution does not lie in placing an undue and uncompensated burden on the individual owner of a single parcel of land in the guise of regulation, even for a public purpose.” (Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, 498.)
In Headley v. City of Rochester (272 N. Y. 197) involving a similar ordinance of the City of Rochester, the court dismissed an action seeking to declare the ordinance and map unconstitutional because plaintiff failed to show any present damage by reason of the ordinance. After saying (pp. 201-202): “to leave the land in private ownership, and, without compensation to the owner, incumber it with restrictions upon its use which would result in diminution in its value might be inequitable and perhaps even beyond the power of the State ” and (p. 205): “ A statute cannot have the effect of depriving a person of his liberty or property unless it prevents such person from doing an act which he desires to do or diminishes the enjoyment or profit which he would otherwise derive from his property ”, the court said (p. 209): “Whether the State may impose conditions for the issuance of permits in order to protect the integrity of the plan of a city where it appears that such conditions interfere with a reasonable use to which the land would otherwise be put or diminishes the value of the land, should not now be decided.”
Since the Headley decision there have been decisions declaring unconstitutional the application of section 35 of the General City Law to properties in which its application resulted in confiscation sufficient to render a zoning ordinance having the same effect unconstitutional. (Rand v. City of New York, 3 Misc 2d 769; Roer Constr. Corp. v. City of New Rochelle, 207 Misc. 46.)
In Vangellow v. City of Rochester (190 Misc. 128 [Van Voorhis, J.]) in which it was held that the official map of the City of Rochester was not totally void, the court construed the language of section 35 of the General City Law purporting to limit the discretion of the Zoning Board of Appeals to instances where “ the land within such mapped street or highway is not yielding a fair return on its value to the owner ’ ’ to signify “ that the board is empowered to grant permits, subject to reasonable conditions, where the land within the bed of the proposed mapped street must be built upon in order to be devoted to the most profitable use, or, if the owner desires to devote it to some other purpose, then to a reasonable use to which the land would actually be put ” (p. 135). While denying plaintiff the relief sought because of its failure to first apply to the Board *531 of Appeals, the court said: “ While the zoning board of appeals could not, unless the evidence before it were to be widely different from that which is now before the court, refuse to permit the construction of showrooms on the ground floor up to the existing street line * * * the board would have power to require that any new or remodeled structure permitted to be erected should be designed in some reasonable manner, to be specified in detail, so that in event of the subsequent widening of Main Street West pursuant to the Bartholomew Plan, it would cost the city in acquiring the land as small an amount for the portion of the building to be destroyed as is consistent with presently devoting the premises to their most profitable use, or, if the owner desires to devote them to some other purpose, then to some reasonable use to which they would actually be put ” (p. 135; emphasis supplied).
In denying motions for summary judgment by all parties to this action, Justice G. Robert Wither wrote (Monroe County, July 30, 1964):
“Planning for the future widening or extension of streets or laying out of new streets is done without the cost to the community of acquiring, or obtaining options to buy, the lands which will be needed to have the plans come to fruition. The Official Map serves to guide citizens in their own plans for construction, and tends to keep those who are acting in good faith from building an improvement where the community would like to place a street when the appropriate time comes; and in this manner the community is saved the expense of buying such improvement along with the land when it decides to acquire it. To the extent that such plans may be established without harm to the citizens across whose lands the proposed streets are to run, they are fine and unobjectionable. * ® * It is apparent that there must be a point where the private owner can compel the municipality either to buy his land lying within the area of the Official Plan for a street or release it from such plan.
“ When an owner in good faith desires to improve such portion of his land it is not too much for him to ask the community to buy it of him in its unimproved state at current value or release it in some measure from the plan. * * * However, if the community could refuse to buy the owner’s land lying within the path of the plan and also refuse to release in any degree the restriction upon its use by the owner, it would amount to an unlawful taking of the property without compensation, provided the owner can show damage at the time.”
Without undertaking to completely define the limits within which one’s use of his land may properly be restricted by the *532 ordinances and statutes here considered, it seems to me that if a property holder, who in good faith wishes to improve his property, is thereby prevented from devoting the property to its best and most profitable use without sustaining substantial damage, the municipality at that time must either acquire the land for the proposed street or permit the property holder to improve the property to the extent reasonably necessary to prevent such damage.
I shall now consider the evidence in the light of this conclusion.
I find, as testified by one of defendant’s experts, that plaintiffs’ property is in one of the highest valued land areas in the City of Rochester. The assessed value of the land alone in the Franklin-Andrews parcel is $57,000 and of the combined parcels $90,000. The area contained in the 14-feet proposed widening constitutes 13.28% of the Franklin-Andrews property and 7.1% of the combined properties. I find, as testified by one of defendant’s experts, that the 14-feet setback will be of no aesthetic benefit to plaintiffs’ proposed building. If plaintiffs are required to set their building back, then for all practical purposes there has been a taking of the 14-feet strip since once the building is erected, this area upon which plaintiffs are obliged to pay taxes, will be of no apparent practical or economic value. I find that this factor alone will substantially damage plaintiffs.
Presently Court Street has one-way eastbound traffic. If the proposed building is set back 14 feet, a presently existing church on the southeast corner of Court Street and Clinton Avenue extending to the present south line of Court Street will, to some extent, obstruct the view of the proposed building, and I find that this circumstance will, to some extent, depreciate its value.
After the commencement of this action and before the trial the skating rink on the R. B. I. property was destroyed by fire. Plans were then drawn for a building complying with the 14-feet setback and incorporating auditorium, gymnasium and other facilities made necessary by the destruction of the rink. This proposed building, the southerly line of which was to be 10 feet north of the south line of the combined properties, provided for 11 stories. The structure originally proposed was 10 stories in height. I find that, aside from the additional construction made necessary by the destruction of the rink, the later proposed building because of its additional height will cost substantially more to construct and maintain. I further find that this building will afford substantially less rental area with consequent less net rental income than the 10-story structure originally proposed.
*533 The city contends and I find that a structure consisting of the 10-story building originally planned and the addition provided in the second plan can be built within the area remaining after the setback. By so doing, however, the south line of the building would extend to the south boundary of the combined properties. Such a solution would expose the plaintiffs to the possibility of a structure being erected on the north line of the property adjoining on the south, reducing or eliminating access to light and air, a circumstance which I find would depreciate the value of the building.
The defendant also produced evidence that the originally planned 10-story building could be constructed within the setback limit provided permission were obtained from the city to have the portion of the building above the first floor overhang the proposed street bed by four feet. In so doing it would be necessary to eliminate a patio on the north side of the building proposed in the original plans. There is no present assurance that the city would grant such permission and the Board of Appeals which may have the authority to do so, did not see fit to advance such a proposal. In any event, I do not believe that the plaintiffs may reasonably be required to construct a building, nine stories of which will overhang the public sidewalk, in the event Court Street is eventually widened.
I am aware of and sympathetic with the defendant’s problem and do not doubt that the proposed widening of Court Street is presently desirable and may eventually become necessary. It seems to me elementary, however, that the expense of providing municipal services should be borne equitably equally. The burden here imposed on plaintiffs is not such.
Plaintiffs are entitled to judgment, with costs (1) declaring that to the extent that their application prevents the plaintiffs from constructing the building described in the complaint within the area of the proposed Court Street widening, section 35 of the General City Law, the official map or plan of the City of Rochester and the ordinances establishing it take plaintiffs’ property for public use without just compensation and are unconstitutional and void, and (2) directing that upon presentation of plans for the building described in the complaint with such modifications and additions as the destruction of the rink require, which otherwise comply with defendant’s ordinances and regulations, defendant issue to plaintiffs or either of them the necessary permits for construction.