Cooke, J. (dissenting).
I dissent and vote to reverse the judgment appealed from and the order of the Appellate Division brought up for review and to dismiss the complaint. It is respectfully submitted that the majority’s determination not only veers from a prevailing body of law but creates a dangerous precedent for other similar situations.
Plaintiff, a widow in her late seventies and depending almost entirely on Social Security income, owned an irregularly shaped plot of 10,792 square feet fronting on Woodrow Road in a sparsely developed area in the Eltingville section of Staten Island. On the parcel were two structures: one, a six and one-half room frame house over a hundred years old and with a partial basement in which were two sump pumps; and, the other, a four room raised bungalow from which plaintiff concededly had no income since 1966 "as a result of a serious water problem”, the bungalow being "in an area where there is a high water table and no storm or sanitary sewers to alleviate the problem.”
In 1964, the City of New York, after a public hearing at which no opposition developed, adopted a revised map providing for a street system of the area, a part of which proposed a substantial widening of Woodrow Road and a new street designated as Anaconda Street which intersected with Woodrow Road. As a result, both of plaintiffs structures and 78% of her property area lay within the bed of these streets as proposed under the map. Significantly, it is undisputed that *1082 . the City of New York has neither appropriated any portion of plaintiff’s property to a public use nor has it denied a permit to plaintiff under section 35 of the General City Law for a building in such streets or highways.
It is settled, as a general rule of law, that mere plotting or planning in anticipation of a public improvement does not constitute a taking or damaging of the property affected (see, e.g., Matter of Mazzone, 281 NY2d 139, 147; Matter of City of New York [Avenue "D"], 200 NY 536, 543; United States v Sponenbarger, 308 US 256, 267-268; Bauman v Ross, 167 US 548, 597; Condemnation-Preimprovement Planning, 37 ALR3d 127, 132, § 3). However, this general rule is subject to exceptions, one being that, where the legal impact of a planning map so restricts the use of the property permanently or for an indefinite time in such a manner as to render the property useless for any reasonable, purpose, there is an unconstitutional taking (Arverne Bay Constr. Co. v Thatcher, 278 NY 222, 232; Rochester Business Inst. v City of Rochester, 25 AD2d 97, 102; see Condemnation—Preimprovement Planning, 37 ALR3d 127, 131, 163).
Forster v Scott (136 NY 577) was decided in 1893. It dealt with a then existing statute which provided (p 582): " 'No compensation shall be allowed for any building, erection or construction which at any time, subsequent to the filing of the maps, plans, or profiles mentioned * * * may be built * * * upon * * * any street, avenue, road, public square or place exhibited upon such maps, plans or profiles’.” It was held that, if the law were valid, "it virtually imposed a restriction upon the use of the property because it enacted that it could not be used for building purposes, except at the risk to the owner of losing the cost of the building at some time in the future” (p 583) and that "[a]s the plaintiff * * * was virtually deprived of the right to build upon his lot by the statute in question * * * it was to that extent void as to him, and created no incumbrance upon it” (pp 584-585).
Thereafter and in 1926, a substantial change in the legal picture appeared when the Legislature, by chapter 690 of the Laws of 1926, added article 3, entitled "Official Maps and Planning Boards”, to the General City Law. That article empowers the legislative body of every city to "establish an official map or plan of the city showing the streets, highways and parks theretofore laid out, adopted and established by law” (§ 26) and "whenever and as often as it may deem it for *1083 the public interest, to change or add to the official map or plan of the city so as to lay out new streets, highways or parks, or to widen or close existing streets, highways or parks” (§ 29). The adoption or revision of a general map pursuant to these provisions of the General City Law does not have the effect of divesting the title of the owner of land in the bed of a street as shown on the map; it does not have the effect of placing upon the city a duty to begin presently condemnation proceedings to acquire such land; and the city is under no compulsion to open any street shown on the map unless and until the legislative body of the city decides that it is actually needed (Headley v City of Rochester, 272 NY 197, 200-201).
In Headley, it was pointed out that a statutory requirement that a city must acquire title to the land in the bed of the streets shown on the general map or plan would create practical difficulties which would' drastically limit, if not render illusory, any power conferred on the city to adopt a general map or plan which will make provision for streets which will be needed only if present anticipations of the future development of the city are realized (p 201). On the other hand, it was observed that, to leave the land in private ownership and without compensation to the owner and encumber it with restrictions upon its use which would result in diminution in its value, might be inequitable and perhaps even beyond the power of the State (pp 201-202). To meet this difficulty, the Legislature provided in section 35 of the General City Law: "For the purpose of preserving the integrity of such official map or plan no permit shall hereafter be issued for any building in the bed of any street or highway shown or laid out on such map or plan, provided, however, that if the land within such mapped street or highway is not yielding a fair return on its value to the owner, the board of appeals or other similar board in any city which has established such a board having power to make variances or exception in zoning regulations shall have power in a specific case * * * to grant a permit for a building in such street or highway which will as little as practicable increase the cost of opening such street or highway, or tend to cause a change of such official map or plan, and such board may impose reasonable requirements as a condition of granting such permit, which requirements shall inure to the benefit of the city.”
Under the provisions of the General City Law, the owner of *1084 land in the bed of a street shown on a map remains as free to alien the land or to use it as said owner sees fit, the same as before the map was adopted, except in one respect—if the owner desires to improve the property by erecting a building for which a permit is required, the grant of such a permit is surrounded by conditions or restrictions which in many cases will act as an obstacle to such use of the land (Headley v City of Rochester, 272 NY 197, 203, supra). If the restriction placed upon the property is necessary to promote the general welfare and does not deprive the owner of use for a reasonable purpose, then an attack under section 35 must fail (Rochester Business Inst. v City of Rochester, 25 AD2d 97, 102, supra; cf. Matter of Winepol v Town of Hempstead, 59 Misc 2d 768, 769 [Meyer, J.]; see 40 Albany L Rev 447, 463, n 83).*
Here, in neither her pleadings nor proof, does plaintiff make claim that she has been deprived of the enjoyment of her land by the inability to erect a structure thereon or that she has been prevented from obtaining a permit for such a purpose. The function of the court is limited to determining the rights of the persons or of property which are actually controverted in the particular case before it; to complain of a ruling one must be made a victim of it; and a person, to defeat a law, cannot invoke an apprehension of what might be done under it and which, if done, might not receive judicial approval (Oriental Blvd. Co. v Heller, 27 NY2d 212; New York Mobile Homes Assn. v Steckel, 9 NY2d 533, 538; Headley v City of Rochester, 272 NY 197, 204, supra).
The gravamen of plaintiff’s complaint seems to be that defendant’s action in adopting the map has rendered the property unmarketable so that the premises can neither be conveyed or mortgaged. This mere inability to sell or mortgage, because of a reduced value resulting from the map adoption, is not compensable. "A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a 'taking’ in the constitutional sense” (Danforth v United *1085 States, 308 US 271, 285). "This reasoning * * * has been applied time and time again to deny compensation based upon the asserted theory that the threat of condemnation constitutes an actual taking * * * and the rule has evolved in this State denying direct recovery for the manifestation of an intent to take * * * or threat to condemn” (City of Buffalo v Clement Co., 28 NY2d 241, 255-256 [1971]).
It is undisputed that plaintiff made no application for a permit pursuant to section 35 of General City Law. Absent proof that plaintiff applied, as permitted in said section, for a permit to erect a building in one of the mapped streets, and that the application was denied, she has not spelled out a cause of action for the determination of whether, under the circumstances, there has been a taking or deprivation without just compensation (Platt v City of New York, 276 App Div 873; Kresge Co. v City of New York, 194 Misc 645, 648, affd 275 App Div 1036; Vangellow v City of Rochester, 190 Misc 128, 132, 136 [Van Voorhis, J.]). This failure by plaintiff to apply for such a permit is in marked contrast to the situation in Roer Constr. Corp. v City of New Rochelle (207 Misc 46), relied on by the majority, where there was an application for and a denial of a building permit (pp 49-50).
Since the proof demonstrated that plaintiff was not aggrieved by an inability to erect a building upon her premises or to use same for a reasonable purpose, since her inability to sell or mortgage because of reduced value is not compensable and since there was no application for a permit under section 35, summary judgment should have been granted to defendant rather than plaintiff.
The net result would be no different if a municipality envisioned plans on a wider scale, not to encompass a major portion of a single parcel or even a few parcels, but to envelop an entire neighborhood. Surely, the vagaries of changing needs, public attitudes and economic conditions could visit substantial delay upon the proposed project, but even the impending impact of the cloud cast upon the neighborhood’s future would not in itself entitle a single owner to a declaration of the plan’s unconstitutionality as to him. The economic forces which might deter financing or sale of the property subject to the implied threat of condemnation would not dissipate by such a declaration since these powers would never contemplate that an island would be allowed to remain in the area once the plans were implemented. Hence, the effect of *1086 any such declaration as to a single property would be a futile gesture to the aggrieved owner, won at the cost of erasing imaginary lines, which at present lack being or substance, and replacing them with a declaration by the court which will not bar ultimate implementation of the plan in its entirety by condemnation.
Indeed, in this light, the court, by declaring the map unconstitutional as to plaintiff, furnishes no assurance that the implied threat of condemnation which plaintiff contends to have impaired salability and mortgageability of her fee will be removed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Cooke, dissents and votes to reverse and dismiss the complaint in a separate opinion in which Judge Fuchsberg concurs.
Judgment appealed from and the order of the Appellate Division brought up for review modified, with costs to plaintiff, in accordance with the memorandum herein and, as so modified, affirmed.

 Since generally, in the absence of statutory provisions to the contrary, the damages are assessed as of the date that the property is taken (see 19 NY Jur, Eminent Domain, § 143), plaintiff would be compensated for the value of any improvements made under a permit issued pursuant to section 35 of the General City Law. The recording of the map "does not restrict in any way the use or improvement of lands * * * before * * * condemnation * * * nor does it limit the damages to be awarded in such proceedings” (Bauman v Ross, 167 US 548, 597; emphasis added).