JAMES VANGELLOW et al., Plaintiffs, *v.* CITY OF ROCHESTER et al., Defendants.

Supreme Court, Equity Term, Monroe County, July 8, 1947.

*Charles E. Callahan* for plaintiffs.

*William H. Emerson, Corporation Counsel (Frederick J. Wilkens* of counsel), for defendants.

VAN VOORHIS, J. Plaintiffs own the real estate situated on the south side of Main Street West between Ford Street and Favor Street, in the city of Rochester, New York. This is divided into six lots having an aggregate frontage of 182.93 feet. They also own other lots in the rear. The depth of their holdings varies from 111.5 feet on Favor Street to 159.3 feet on Ford Street. The more valuable portion is, of course, the frontage on West Main Street. This land is now occupied by an assortment of old buildings which are now ill adapted to the neighborhood. Some of this frontage is rented by plaintiffs to tenants and some of it is used by them in their business as distributors of fixtures and equipment for restaurants, hotels, groceries and markets. Their showrooms are antiquated and crowded, and need enlargement. Although plaintiffs were unable to state the exact area now utilized for this purpose, an expert in the business testified that according to the custom of the trade their present volume of business warranted four times as much showroom floor space as they now occupy. They propose to tear down and reconstruct the existing buildings, which the evidence indicates is the reasonable thing to do in order to obtain the best use of the property, which is better suited to display space of this nature than to any other purpose.

In making plans for reconstruction, plaintiffs are confronted at the outset with what is known in the city of Rochester as the Bartholomew Major Street Plan. That consists in the adoption by the City Council on recommendation of the City Planning Board on July 23, 1930, and the amendment on April 27, 1931, of an official map or plan of the city of Rochester under article 3 of the General City Law. This statute became law in 1926, in furtherance of the objects to be attained by city planning to facilitate the laying out or widening of principal thoroughfares in and through the city. Accordingly, in Rochester, a major street plan was adopted designating the principal thoroughfares and indicating where the necessity for street widening was expected to arise.

The statute makes provision for amendments from time to time of the official map, so that it may be kept continually up to date, and stand as an official forecast of what the city is likely to do in these respects.

Among the major streets thus projected is Main Street West. The official map provides for the contemplated widening of this street to include a ten-foot strip on the south side across the entire width of plaintiffs' frontage between Ford and Favor Streets. Under section 35 of article 3 of the General City Law, building is prohibited within the strip so designated, although the land has not been condemned nor the property owners reimbursed for being deprived of the privilege of building thereon. The object of this action is to obtain a declaratory judgment determining the said official map and the ordinance whereby it was adopted to be unconstitutional and void, insofar as plaintiffs' property is affected. The exact language of section 35 of the General City Law, insofar as material, is as follows: " For the purpose of preserving the integrity of such official map or plan no permit shall hereafter be issued for any building in the bed of any street or highway shown or laid out on such map or plan, provided, however, that if the land within such mapped street or highway is not yielding a fair return on its value to the owner, the board of appeals or other similar board in any city which has established such a board having power to make variances or exception in zoning regulations shall have power in a specific case by the vote of a majority of its members to grant a permit for a building in such street or highway which will as little as practicable increase the cost of opening such street or highway, or tend to cause a change of such official map or plan, and such board may impose reasonable requirements as a condition of granting such permit, which

requirements shall inure to the benefit of the city. * * *
Any such decision shall be subject to review by certiorari order
issued out of a court of record in the same manner and pur-
suant to the same provisions as in appeals from the decisions
of such board upon zoning regulations.''

Plaintiffs' properties are in a commercial district in the city
of Rochester. Their Main Street frontage is entirely covered
by buildings, the front walls of which are located along the
property line of the existing street instead of being adjusted
to the proposed widening. Plaintiffs' buildings were erected
prior to the adoption of the original official map in 1930. No
fault is found with them as they now are, but in order to
remodel or reconstruct them it is necessary to obtain a building
permit from the Superintendent of Buildings of the City of
Rochester. Section 35 of the General City Law forbids the
issuance of such a permit unless the plans call for the reloca-
tion of the buildings ten feet farther back from the street,
except that if the property '' is not yielding a fair return
on its value to the owner,'' the Zoning Board of Appeals
is empowered to make dispensation subject to reasonable
conditions.

The procedure contemplated by the statute is, that if an
abutting property owner desires to build in the bed of a mapped
street, he shall first apply for a building permit on filing his
plans with the duly authorized municipal officer, in this instance,
the Rochester superintendent of buildings. Such official will
be obliged by the statute to deny such application, whereupon
the law contemplates that an appeal may be taken to the Zoning
Board of Appeals, which is empowered in proper cases to grant
the permit.

Plaintiffs have commenced this action on the theory that the
act of the city in imposing this setback line across their West
Main Street frontage deprives them of property without due
process of law, and takes private property for a public use
without just compensation, and that, therefore, this municipal
regulation is unconstitutional and void. They assert that they
are not required to address themselves to the dispensing power
of the Zoning Board of Appeals for the reason that it has no
power to act at all. A property owner cannot be compelled,
before going into court, to resort to a municipal board to be
exempted from the operation of an ordinance which the munici-
pality was wholly without power to enact against him (*Dowsey*
v. *Village of Kensington*, 257 N. Y. 221; *Brown* v. *University
of the State of New York*, 242 App. Div. 85, affd. 266 N. Y.

598; *Arverne Bay Construction Co.* v. *Thatcher,* 278 N. Y. 222).

On the other hand, if the ordinance or regulation is valid to some extent, or for certain purposes, respecting plaintiffs' real estate, recourse to the Zoning Board of Appeals is a condition precedent to review in the courts (Civ. Prac. Act, § 1285; *Arverne Bay Construction Co.* v. *Thatcher,* 278 N. Y. 222, *supra*). Plaintiffs may not by-pass the zoning board if it has any valid jurisdiction over this property under section 35 of the General City Law, notwithstanding that said board would be precluded from taking certain types of action that might be confiscatory. Action by the board can be reviewed in court under article 78 of the Civil Practice Act. In order to decide whether plaintiffs are justified in suing in the Supreme Court without first seeking redress from the Zoning Board of Appeals, after an unsuccessful application to the building superintendent, it is necessary to analyze further the effect of the official map upon plaintiffs' real estate in the light of the provisions of the enabling act (General City Law, art. 3).

The leading case on the subject is *Headley* v. *City of Rochester* (272 N. Y. 197), which involved a house built upon a large lot on East Avenue in what was formerly, at least, a prominent residential section of the city of Rochester. The setback line imposed by the Bartholomew plan for street widening extended across Mr. Headley's land, and prevented him from building upon a strip twenty-five feet wide taken from the front of his yard. The Appellate Division held that he was entitled to a declaratory judgment determining the map to be void as unconstitutional in that it deprived him of property for a public use without just compensation (247 App. Div. 562). The Court of Appeals reversed on the ground that Headley was not a party aggrieved, and, therefore, lacked status to raise questions of constitutionality.

Headley's property was not situated upon a side street. The boundary line of the bed of the mapped street passed across his land. Therefore, when the Court of Appeals held that he was not an aggrieved party, it could not have meant that he was not affected, but rather that he was not damaged, for the reason, as the opinion indicates, that inability to build in that strip did not depreciate the value of his property as a whole, nor interfere with any use to which he intended in good faith to devote the said strip. In the language of the opinion, written by Judge LEHMAN, Headley's property could be " put to the most profitable use by the erection of a building which does not encroach upon the small portions which may be used hereafter

to widen the street. * * * Whether the State may impose conditions for the issuance of permits in order to protect the integrity of the plan of a city where it appears that such conditions interfere with a reasonable use to which the land would otherwise be put or diminishes the value of the land, should not now be decided.'' (P. 209.)

The facts in the present case are in some respects different from those in the *Headley* case. Commercial, rather than residential, real estate is involved. The existing buildings extend to the property line of the street, which is different from the case of a residence set back from the street by a large front yard. The area now covered by buildings is 68.5% of the total area of plaintiffs' West Main Street lots. If the Bartholomew setback line is adhered to, it will mean a loss of 1,330 square feet of floor space taken from the front portion of the showrooms proposed to be built on the ground floor. Use for that purpose constitutes, according to the undisputed evidence, the most profitable use to which this land can be devoted. The loss of such space cannot be overcome, without detriment to the value of the premises, by designing the new building so as to make room for an equivalent showroom floor space around the corner on Ford Street. Neither could the entire proposed building be moved back ten feet without losing valuable loading and parking space at the rear, nor without interfereing with the existing warehouse, which stands at the rear, and is made of concrete blocks. This warehouse adds value to the premises, and would reasonably be used in connection with a new building. The conclusion is inevitable that plaintiffs cannot be prohibited from encroaching on the disputed strip without thereby depreciating the fair and reasonable market value of the land.

Nevertheless, this does not mean that the property cannot be devoted to its most profitable use if reasonable limitations are imposed upon the design of a new structure. To erect, for example, a multiple-story building out to the present street line, might easily bear no more relation to the most profitable use for these premises, or to any use that plaintiffs reasonably intend to devote them to, than was the case with the twenty-five-foot strip of Headley's front lawn. There is no evidence in this record that it is necessary to erect second or third stories extending out to the street line, so as to avoid '' interfering with or diminishing the value of the present property rights of the person complaining.'' (272 N. Y. 206.)

This is where the function of the Zoning Board of Appeals comes into operation. That board, on proper application by

plaintiffs, on the facts before the court on this record, would have been powerless to refuse a building permit to erect a ground floor showroom extending to the present street line, but there is no evidence before the court indicating that the board would not have jurisdiction, without depreciating the value of the premises, or interfering with any use to which they would reasonably be put, to direct that a building permit issue on condition, for example, that upper stories should conform to the ten-foot setback line, and that the structural plans of the building should be so designed as to allow the removal at some future date of the portion of the ground floor showroom encroaching on this strip without damage to the structure of the building as a whole. It is true that no valid condition could be imposed requiring plaintiffs, their successors or assigns, to surrender the right to just compensation in event that the city should later condemn the ten-foot strip. Such compensation would necessarily include recompense for the value of that portion of the ground floor showroom extending into the area to be appropriated under the power of eminent domain. Nevertheless, provided that it can be accomplished without materially diminishing the value or usefulness of the premises, constitutional law does not prevent the city, in the exercise of the police power pursuant to the enabling act, from requiring that the new building be erected in such manner as to minimize the damage thereto which will result when and if, in the future, the city shall decide to widen West Main Street.

Setback lines have often caused buildings to be terraced back from the street as they rise upward. There is, to be sure, a distinction between establishing setback lines to promote the public health or welfare by making space for light and air (*Matter of Wolfsohn* v. *Burden*, 241 N. Y. 288), and creating them in order to enable a municipality to economize in event that it later chooses to widen a street. To the abutting owner, it may not appear to make much difference whether setbacks are imposed upon his land for the one purpose or the other. The police power can be brought to bear to prevent what was described in the *Headley* case as the "haphazard" or "malicious" development of abutting property which would disrupt the general street plan, where thus invoking the police power does not materially affect the value or prevent the owner from applying the premises to some reasonably intended use. It can be invoked to prevent a property owner, for example, from commencing to build within the bed of a mapped street where there is no other object in doing so than to compel a municipality to purchase his land.

Enough appears in this record to indicate that the Bartholomew street widening plan is not entirely without force or effect as regards the premises of these plaintiffs. Therefore, its constitutionality cannot be attacked directly by action on the ground that it is wholly void, as was done in *Dowsey* v. *Village of Kensington* (257 N. Y. 221, *supra*) and similar cases. While the zoning board of appeals could not, unless the evidence before it were to be widely different from that which is now before the court, refuse to permit the construction of showrooms on the ground floor up to the existing street line, nor impose as a condition thereof that plaintiffs should waive the right to just compensation when and if the street is widened, nevertheless, the board would have power to require that any new or remodeled structure permitted to be erected should be designed in some reasonable manner, to be specified in detail, so that in event of the subsequent widening of Main Street West pursuant to the Bartholomew plan, it would cost the city in acquiring the land as small an amount for the portion of the building to be destroyed as is consistent with presently devoting the premises to their most profitable use, or, if the owner desires to devote them to some other purpose, then to some reasonable use to which they would actually be put.

What has been said concerning the possibility of prohibiting a building of more than one story on the disputed ten-foot strip, is not a determination that such a building design should necessarily be adopted, which is a matter that would, in any event, be for the board of appeals to decide, at least, in the first instance. It was mentioned by way of example, to illustrate that the Zoning Board of Appeals has *some* jurisdiction over the premises.

The attention of the court has been called to the wording of section 35 of the General City Law purporting to limit the dispensing power of the Zoning Board of Appeals to instances where " the land within such mapped street or highway is not yielding a fair return on its value to the owner ". That is general language, and is construed to signify that the board is empowered to grant permits, subject to reasonable conditions, where the land within the bed of the proposed mapped street must be built upon in order to be devoted to the most profitable use, or, if the owner desires to devote it to some other purpose, then to a reasonable use to which the land would actually be put. Such a construction, which this language of section 35 will sustain, appears to be necessary in order to preserve the constitutionality under the decision of the Court

136

of Appeals in *Headley* v. *City of Rochester* (272 N. Y. 197, *supra*).

The portion of plaintiffs' frontage known as 273–275 Main Street West (Lot No. 2903118) was conveyed to plaintiffs by the City of Rochester, after a tax foreclosure, on January 11, 1945. Regardless of the validity of the official map respecting plaintiffs' other lots, the ten-foot setback line is binding on this particular lot under private contract between plaintiffs and the city, as in the case of any covenant not to build contained in a deed.

A declaratory judgment may be entered determining that the official map or plan of the city of Rochester, adopted pursuant to article 3 of the General City Law, insofar as it relates to plaintiffs' premises on the south side of West Main Street between Ford Street and Favor Street, is not totally void, and that the Supreme Court has no jurisdiction to render judgment (further than to make that determination) prior to review by the Zoning Board of Appeals of some determination of the superintendent of buildings rejecting an application to reconstruct or remodel a structure or structures on the premises.