STATE EX REL. MILLER, Appellant, vs. MANDERS, Building
Inspector, and others, Respondents.

*November 6—December 3, 1957.*

366

For the appellant there were briefs by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Arthur Kaftan.*

For the respondents there was a brief and oral argument by *Clarence W. Nier,* city attorney of Green Bay.

CURRIE, J.    The issue before us on this appeal is whether Wisconsin's Official Map Law (sec. 62.23 (6), Stats.), and the ordinances of the city of Green Bay enacted pursuant thereto, are unconstitutional as being a taking by the city of the relator's property for public use without just compensation.

A comprehensive history of such statute is to be found in an article entitled, "Wisconsin's Official Map Law" by Joseph C. Kucirek and J. H. Beuscher appearing in 1957 Wisconsin Law Review, 176.    Edward M. Bassett and Frank B. Williams, experts in the field of municipal planning, drafted the original Official Map Statute enacted by the state of New York in 1926.    Our Official Map Statute, which was

enacted by the 1941 Wisconsin legislature, was substantially copied from that of New York. As of the time of the writing of the article by Kucirek and Beuscher, thirty-three Wisconsin cities and villages had adopted official map ordinances pursuant to sec. 62.23 (6), Stats. Among such municipalities is the city of Green Bay.

Pars. (a) and (b) of sec. 62.23 (6), Stats., provide. for the adoption by the common council of any city by ordinance or resolution of an official map showing existing streets, highways, parkways, parks, and playgrounds, and also "the exterior lines of planned new streets, highways, parkways, parks, or playgrounds." Par. (d) of sec. 62.23 (6), which is the paragraph with which we are particularly concerned on this appeal, reads:

"(d) For the purpose of preserving the integrity of such official map, no permit shall hereafter be issued for any building in the bed of any street, highway, or parkway, shown or laid out on such map except as provided in this section. . . . Any person desiring to construct a building in the bed of a street, highway, or parkway so shown as extended may apply to the authorized official of the city or village for a building permit. Unless such application is made, and the permit granted or not denied within thirty days, such person shall not be entitled to compensation for damage to such building in the course of construction of the street, highway, or parkway. If the land within such mapped street, highway, or parkway is not yielding a fair return, the board of appeals in any municipality which has established such a board having power to make variances or exceptions in zoning regulations, shall have power in a specific case, by the vote of a majority of its members, to grant a permit for a building in such street, highway, or parkway, which will as little as practicable increase the cost of opening such street, highway, or parkway, or tend to cause a change of such official map; and such board may impose reasonable requirements as a condition of granting such permit, which requirements shall be designated to promote the health,

convenience, safety, or general welfare of the community. Such board shall refuse a permit where the applicant will not be substantially damaged by placing his building outside the mapped street, highway, or parkway."

The first question to be considered is whether the enactment of sec. 62.23 (6), Stats., by the legislature can be sustained as a valid exercise of the police power on the ground that it tends to promote the general welfare.

One of the objectives of the statute is to promote orderly city growth and development so as to prevent the haphazard erection of buildings, and the installation of service facilities, which bear no relationship to future streets. There are practical reasons why municipalities, such as cities, should have the right to enforce such planning in advance of the actual acquiring title to the land underlying proposed streets in areas undergoing improvement and development. This was emphasized by the New York court of appeals in *Headley v. Rochester* (1936), 272 N. Y. 197, 201, 5 N. E. (2d) 198, 200, in which it was considering the New York Official Map Law. We quote from such opinion as follows:

"A statutory requirement that a city must acquire title to the land in the bed of the streets shown on the general map or plan, and provide compensation for the land taken, would create practical difficulties which would drastically limit, if, indeed, they did not render illusory, any power conferred upon the city to adopt a general map or plan which will make provision for streets which will be needed only if present anticipations of the future development of the city are realized."

There would seem to be little doubt that an objective which seeks to achieve better city planning is embraced within the concept of promoting the general welfare. 1 Metzenbaum, Law of Zoning (2d ed.), p. 484. A broad reading of the recent decision by the United States supreme court in *Berman v. Parker* (1954), 348 U. S. 26, 75 Sup. Ct. 98, 99 L. Ed. 27, is that the constitution will accommodate a

wide range of community-planning devices to meet the pressing problems of community growth, deterioration, and change. Constitutional Law and Community Planning by Prof. Corwin W. Johnson, 20 Law and Contemporary Problems, 199, at page 208.

A second objective of sec. 62.23 (6), Stats., is made manifest by the afore-quoted provision of par. (d) thereof, that authorizes the board of appeals to grant a permit to erect a building within the lines of a proposed street shown on the official map "which will as little as practicable increase the cost of opening such street." Such objective is to protect the financial interests of taxpayers of the city. This court has previously held that the protection of economic interests of the general public falls within the scope of promotion of the general welfare, and thereby affords a basis for the exercise of the police power. *State v. Ross* (1951), 259 Wis. 379, 384, 48 N. W. (2d) 460, and *State ex rel. Saveland P. H. Corp. v. Wieland* (1955), 269 Wis. 262, 267, 69 N. W. (2d) 217.

In *Vangellow v. Rochester* (1947), 190 Misc. 128, 71 N. Y. Supp. (2d) 672, an action for declaratory judgment was instituted by the plaintiff property owners to have declared unconstitutional an ordinance of the defendant city enacted pursuant to New York's Official Map Law. Such ordinance contained provisions similar to those set forth in par. (d) of sec. 62.23 (6), Stats. The New York court held that it had no jurisdiction to render judgment declaring the ordinance void until the plaintiffs had first pursued their remedy to obtain a building permit before the board of appeals. However, in discussing the right of the city to impose conditions in the granting of a building permit within the lines of a proposed street, which would minimize the cost to the city in acquiring the property in the event of future condemnation, the court made this significant statement (190 Misc. 134, 71 N. Y. Supp. (2d) 678):

"Nevertheless, provided that it can be accomplished without materially diminishing the value or usefulness of the premises, constitutional law does not prevent the city, in the exercise of the police power pursuant to the enabling act, from requiring that the new building be erected in such manner as to minimize the damage thereto which will result when and if, in the future, the city shall decide to widen West Main street."

While such opinion in the *Vangellow Case* was rendered by the New York supreme court, which is a trial and not an appellate court, it was written by Mr. Justice VAN VOORHIS, now a member of the New York court of appeals.

The afore-quoted extract from the *Vangellow Case* opinion clearly indicates that the right to exercise the police power to protect a municipality against added costs, which might have to be incurred in case of future condemnation or purchase of property needed for a public improvement, is subject to rather narrow limits. The draftsmen of the original New York Official Map Law, from which our Wisconsin statute was substantially copied, recognized this. That is why the saving clause was inserted therein which is duplicated in par. (d) of sec. 62.23 (6), Wis. Stats. Without such a saving clause it is extremely doubtful if an Official Map Statute would be constitutional.

Such saving clause, as found in our own statute, requires that the board of appeals shall refuse a building permit "where the applicant will not be substantially damaged by placing his building outside the mapped street, highway, or parkway." We deem that par. (d) of sec. 62.23 (6), Stats., must be so construed that the converse of this is true, viz., it is the duty of the board of appeals to grant the permit if the applicant property owner would be substantially damaged if the permit were to be denied. This is because this court must so construe the Official Map Law as to sustain its

constitutionality if possible to do so. *Building Height Cases* (1923), 181 Wis. 519, 527, 195 N. W. 544.

Par. (d) of sec. 62.23 (6), Stats., authorizes the board to "impose reasonable requirements as a condition of granting" a building permit to erect a building within the boundary lines of a proposed street shown on the official map. In *Vangellow v. Rochester, supra,* the New York court points out one type of condition which might be so imposed. This phase is also discussed in the article by Kucirek and Beuscher, 1957 Wisconsin Law Review, 176, at pages 197–200.

If the board of appeals should deny a permit under circumstances which would result in substantial damage to the applicant property owner, or should grant the permit subject to condition which would result in such substantial damage, the aggrieved applicant may secure court review by certiorari. This is expressly authorized by par. (f) of sec. 62.23 (6), Stats. Trial of the issues presented in such certiorari proceedings is accorded preference over all other civil actions and proceedings. Sec. 62.23 (7) (e), (f). This court has recently held that an abuse of discretion on the part of an administrative board is subject to review by certiorari. *Smith v. Brookfield* (1956), 272 Wis. 1, 8, 74 N. W. (2d) 770, and *State ex rel. Saveland P. H. Corp. v. Wieland, supra.* Cases from other jurisdictions, which hold that an abuse of discretion by an administrative board, such as a zoning and planning board of appeals, is reviewable by certiorari are *Walker v. San Gabriel* (1942), 20 Cal. (2d) 879, 129 Pac. (2d) 349, 142 A. L. R. 1383, and *Morgan v. Zoning Board of Review* (1932), 52 R. I. 338, 160 Atl. 922.

A recent New York trial court decision rendered in *Rand v. New York* (1956), 3 Misc. (2d) 769, 155 N. Y. Supp. (2d) 753, rather indicates that in New York a

review by certiorari does not afford such scope of relief. There the plaintiff landowner sought a declaratory judgment adjudging New York's Official Map Law unconstitutional as applied to the plaintiff's property and the court granted the plaintiff summary judgment. Plaintiff had applied for a permit to erect a brick-and-steel garage building in the bed of a proposed street shown on the defendant city's official map. Such application was denied and she then appealed to the board of appeals. The board of appeals granted the permit subject to the condition that the plaintiff would agree that, in the event of future condemnation by the city, the cost of the building be amortized over a ten-year period. The minimum useful life of the building was fifty years. Without instituting certiorari to review such determination of the board of appeals, the plaintiff instituted action for declaratory relief. The court held that under the condition imposed by the board there would be a taking of plaintiff's property without just compensation. The opinion assumed that the Official Map Statute *"standing by itself"* might be a lawful exercise of the police power, but held that it was not as applied to plaintiff's property.

We do not consider that the precedent of the *Rand Case* is one which should be applied by our Wisconsin courts. This is because a property owner, in the situation of the plaintiff in that case, would possess an adequate remedy by certiorari to set aside an illegal condition which the board of appeals might have imposed as a condition for granting a building permit.

The mere fact that the relator in the instant case was denied a building permit thus preventing him from erecting a building upon that part of his land lying in the bed of the proposed street, does not establish the unconstitutionality of sec. 62.23 (6), Stats. This court nearly thirty years ago upheld the setback provisions of a zoning ordinance in *Bouchard v. Zetley* (1928), 196 Wis. 635, 220 N. W. 209,

basing such determination upon the precedent of *Gorieb v. Fox* (1927), 274 U. S. 603, 47 Sup. Ct. 675, 71 L. Ed. 1228.

The authority particularly relied upon by counsel for the relator, in urging the unconstitutionality of the statute, is *State ex rel. Tingley v. Gurda* (1932), 209 Wis. 63, 243 N. W. 317. There, as in the instant case, the relator property owner instituted mandamus proceedings to compel the issuance of a building permit. The defense was grounded upon a city of Milwaukee zoning ordinance that zoned the block, in which relator's land was located, so as to restrict it to residential purposes. The relator sought a permit to erect a building to be used for industrial purposes. This block was bounded on the east and west by property devoted to industrial purposes, on the south by a railroad right of way, and on the north by a public street. Furthermore, prior to the annexation of such block to the city, it had been zoned for industrial purposes. The trial court found that the market value of the premises for industrial purposes was $15,000 to $19,350, while for residential purposes it was only $3,000. The record disclosed "suggestions" that the city planning commission contemplated some time in the future acquiring the property for a boulevard, and that the zoning of the premises for residential purposes was in order to destroy the value of such property so as to enable the city to carry out such project with less expense to itself. This court affirmed the judgment below in favor of the relator and in its opinion stated (209 Wis. at p. 70) :

"The zoning power is one which may be used to the great benefit and advantage of a city, but, as this case indicates, it is a power which may be greatly abused if it is to be used as a means to depress the values of property which the city may upon some future occasion desire to take under the power of eminent domain. Such a use of the power is utterly unreasonable and cannot be sanctioned."

We consider that the zoning restriction in *State ex rel. Tingley v. Gurda, supra,* is readily distinguishable from those imposed by sec. 62.23 (6), Stats. We cannot spell out of the latter statute any legislative motive to depress existing property values. Furthermore, the saving clause contained in par. (d) protects a property owner against any substantial damage that might be inflicted upon him in the future operation of the statute by denial of a building permit.

It is our considered judgment that sec. 62.23 (6), Stats., is a valid exercise of the police power and is constitutional. We further determine that the relator has failed to establish that the Green Bay official map ordinances, as applied to his property, are unconstitutional. However, we do not rule out the possibility that under certain circumstances a municipal official map ordinance drafted pursuant to, and in compliance with, sec. 62.23 (6) might be invalid as applied to particular lands. For a situation where this might be the result, see *Roer Construction Corp. v. New Rochelle* (1954), 207 Misc. 46, 136 N. Y. Supp. (2d) 414.

We do not consider any arguments addressed to the merits of the issue, of whether the denial of a building permit by the building inspector and board of appeals caused substantial damage to the relator, to be germane to this appeal. Such issue must be raised by certiorari as provided by par. (f) of sec. 62.23 (6), Stats.

*By the Court.*—Judgment affirmed.