**GRAND FORKS–TRAILL WATER
USERS, INC., Plaintiff
and Appellee,**

v.

**Walter R. HJELLE, North Dakota
State Highway Commissioner,
Defendant and Appellant.**

Civ. No. 870035.

Supreme Court of North Dakota.

Sept. 29, 1987.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for plaintiff and appellee; argued by John D. Kelly.

Steven F. Lamb, Asst. Atty. Gen., N.D. State Highway Dept., Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

Walter R. Hjelle, North Dakota State Highway Commissioner (Commissioner), appealed from a district court judgment awarding Grand Forks—Traill Water Users, Inc. (Traill), compensation, attorney fees, and costs in its action for damages for relocating a water line. We reverse.

In 1971 and 1972 Traill obtained easements from private landowners to construct a water line parallel to State Highway 18 near Hatton, North Dakota. The line was constructed outside the then-existing highway right of way, but within 100 feet of the centerline of the highway. Traill did not request the Commissioner's consent for the location of the water line except where the line crossed under the highway. The Commissioner issued permits for those crossings.

In 1984 the highway department acquired additional right of way and construction easements, including land upon which Traill had its water line easements, for planned highway improvements along State Highway 18. Because the highway department removed several feet of the ground cover over the water line in making the highway improvements in 1985, Traill was required to relocate its water line to avoid frost damage.

Relying on §§ 24–01–42[1] and 24–01–43,[2] N.D.C.C., both enacted before Traill constructed the water line, the Commissioner refused to compensate Traill for expenses incurred in relocating the water line. Traill sued for a declaration that the statutes are unconstitutional, indemnity for the costs of replacing the water line, and attorney fees. The trial court concluded that the statutes are unconstitutional and that Traill's property had been taken or damaged without compensation, and it awarded Traill compensation, attorney fees, and costs.

Resolution of this appeal requires us to address two issues: (1) whether § 24–01–42 and 24–01–43, N.D.C.C., constitute reasonable land-use regulations not requiring compensation or a taking of private property requiring just compensation; and (2) whether those statutes violate constitutional guarantees of equal protection.

"A statute enjoys a conclusive presumption of constitutionality unless it is clearly shown that it contravenes the state or federal constitution." *Richter v. Jones*, 378 N.W.2d 209, 211 (N.D.1985). A statute will be construed, if possible, so that it will pass constitutional muster. *In re Kupperion*, 331 N.W.2d 22 (N.D.1983). Any doubt as to the constitutionality of a statute must be resolved in favor of its validity. *Snortland v. Crawford*, 306 N.W.2d 614 (N.D. 1981). "Courts will construe statutes so as to harmonize their provisions with the Constitution if it is possible to do so, to the end that they may be sustained." Syllabus 3, *Hjelle v. Sornsin Construction Co.*, 173 N.W.2d 431 (N.D.1969).

*1. regulation or taking*

█ Article I, § 16, N.D. Const., provides that "[p]rivate property shall not be taken or damaged for public use without just compensation." It is broader than the guarantee of the Fifth Amendment to the United States Constitution. *Donaldson v. City of Bismarck*, 71 N.D. 592, 3 N.W.2d 808 (1942). It "was intended to secure to owners, not only the possession of property, but also those rights which render possession valuable." *Id.*, Syllabus ¶ 1.

In *Rippley v. City of Lincoln*, 330 N.W.2d 505, 507 (N.D.1983), we explained the state's power to regulate land use and the point at which regulation becomes a taking:

"The state, acting through its police power, has broad authority to enact land use regulations without compensating landowners for restrictions placed upon their property, and a zoning ordinance, one type of land use regulation, does not constitute a taking for which compensation must be paid merely because it diminishes the value of the regulated property or disallows the best and highest use of the property. *Eck v. City of Bismarck*, 283 N.W.2d 193 (N.D.1979); *Newman Signs, Inc. v. Hjelle*, 268 N.W.2d 741 (N.D.1978). However, governmental regulation which prohibits all or substantially all reasonable use of the regulated property constitutes a taking of the property for public use which entitles the landowner to just compensation through an inverse condemnation action. *See, Kraft v. Malone*, 313 N.W.2d 758 (N.D.1981)."

█ In determining whether a restriction constitutes a taking, courts look to the effect of the restriction on the parcel of land as a whole, rather than to the effect on individual interests in the land. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, ── U.S. ──, ──, 107 S.Ct.

1. *"24–01–42. Construction of utility facility—Limitation.—* No person, firm or association shall construct any electrical supply or communication line, gas, oil or water or other pipeline parallel to and within one hundred feet [30.48 meters] of the center line of any state highway right of way or within seventy-five feet [22.86 meters] of the center line of any county highway right of way without first obtaining the consent of the highway commissioner or board of county commissioners ex-cept that such prohibition shall not apply to highways or streets located within areas platted as townsites or additions and subdivisions thereof."

2. *"24–01–43. Utility facility—Removal.—* Any utility or transmission line hereinafter constructed contrary to the provisions of section 24–01–42 shall be removed at the expense of the utility, when such removal is required for purposes of highway expansion."

1232, 1248, 94 L.Ed.2d 472, 496 (1987) [quoting *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 130–131, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631, 652 (1978)]:

> " ' "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature of the interference with rights *in the parcel as a whole*—here the city tax block designated as the "landmark site." ' "

In our view, prohibiting a landowner, and thus his lessee or grantee, from constructing "any electrical supply or communication line, gas, oil or water or other pipeline" within 100 feet of the center line of a state highway without the Commissioner's consent (§ 24–01–42, N.D.C.C.) upon pain of removal "at the expense of the utility, when such removal is required for purposes of highway expansion" (§ 24–01–43, N.D.C.C.) "does nothing more than regulate one particular future use of property while leaving available to the property owner all other uses." *Newman Signs, Inc. v. Hjelle*, 268 N.W.2d 741, 758 (N.D. 1978). Thus, the statutes do not prohibit all or substantially all reasonable uses of the regulated property as a whole.

■ Traill argues that "it can hardly be argued that the 100–foot restriction is based on any safety considerations or that it has a reasonable relationship to any other matter of general public welfare" and that "the legislature enacted these statutes simply to reduce the cost of possible future highway expansion." While safety considerations may not be as great in the case of a buried water line as with some of the other types of lines restricted by the statutes, we are not prepared to say the statute is "clearly arbitrary and unreasonable having no substantial relation to the public health, safety, morals or public welfare." *Soderfelt v. City of Drayton*, 79 N.D. 742, 752, 59 N.W.2d 502, 507 (1953). The stat-

ute tends to promote sound and efficient highway planning, safety, and the public welfare. In limited circumstances, reducing the cost of possible future highway expansion is a permissible objective. *See State v. Manders*, 2 Wis.2d 365, 86 N.W.2d 469, 473 (1957) ("protection of economic interests of the general public falls within the scope of promotion of the general welfare, and thereby affords a basis for the exercise of the police power"). *See also Vangellow v. City of Rochester*, 190 Misc. 128, 71 N.Y.S.2d 672, 678 (1947) (quoted by the court in *State v. Manders, supra*) where the court said:

> "[P]rovided that it can be accomplished without materially diminishing the value or usefulness of the premises, constitutional law does not prevent the City, in the exercise of the police power pursuant to the enabling act, from requiring that the new building be erected in such manner as to minimize the damage thereto which will result when and if, in the future, the City shall decide to widen West Main Street."

It does not appear to us that the 100–foot restriction on the installation of utility lines has materially diminished the value or usefulness of the premises as a whole. As in *State v. Manders, supra*, 86 N.W.2d at 475, "[w]e cannot spell out ... any legislative motive to depress existing property values."

Traill's reliance on cases such as *Magnolia Pipe Line Co. v. City of Tyler*, 348 S.W.2d 537 (Tex.Civ.App.1961); *Arkansas La. Gas Co. v. La. Dept. of Highways*, 104 So.2d 204 (La.App.1958); and *Panhandle Eastern Pipe Line Co. v. State Highway Comm'n*, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090 (1935), is misplaced. Unlike this case, those cases did not involve pipelines installed after the enactment of a regulation similar to §§ 24–01–42 and 24–01–43, N.D.C.C. We also do not deem *Nollan v. California Coastal Comm'n*, 483 U.S. ——, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) and *First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. ——, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), to be particularly helpful in resolving this

issue. While those are important decisions, the underlying facts in them are readily distinguishable in significant respects. In *Nollan*, the conditioning of a building permit upon Nollan's "transfer to the public of an easement across their beachfront property" (107 S.Ct. at 3143) was held to be a "permanent physical occupation" (107 S.Ct. at 3145) constituting a taking requiring compensation. The instant case does not involve a permanent physical occupation. In *First English*, the complaint alleged "that the ordinance in question denied appellant *all use* of its property." (107 S.Ct. at 2389). The statutes involved in this case do not deny all use or substantially all use of the property as a whole.

We conclude that Traill has not shown that §§ 24–01–42 and 24–01–43, N.D.C.C., effect an unconstitutional taking of property without just compensation. Under the circumstances of this case, those statutes constitute reasonable land-use regulations not requiring compensation for removal of a water line which was installed without the consent of the Commissioner.

### 2. equal protection

■ Traill argues that §§ 24–01–42 and 24–01–43, N.D.C.C., deny equal protection because the classification they establish restricts the placement of utility lines within 100 feet of state highways, but "places no similar restrictions on the construction of fences, buildings, television towers, industrial facilities, or even a private road."

A classification does not deny equal protection "if any state of facts reasonably can be conceived that would sustain it." *Newman Signs, Inc. v. Hjelle, supra,* 268 N.W.2d at 758 [quoting *Signal Oil & Gas Co. v. Williams County,* 206 N.W.2d 75, 83 (N.D.1973) ]. "Reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." Syllabus 4, *State v. Gamble Skogmo, Inc.,* 144 N.W.2d 749 (N.D.1966). "Through what precise points in a field of many competing pressures a

legislature might most suitably have drawn its lines is not a question for judicial re-examination." Syllabus 6, *State v. Gamble Skogmo, Inc., supra.* Preventive legislation need not work a perfect cure. *Snyder's Drug Stores, Inc. v. North Dakota State Bd. of Pharmacy,* 219 N.W.2d 140 (N.D.1974).

The Legislature could reasonably have determined that the frequency with which utility lines are constructed near highways created the problem most in need of reform. The Legislature could also reasonably have determined that restricting the construction of utility lines would not materially diminish the value or usefulness of adjacent property, but that similar restrictions on other types of construction might materially diminish the value or usefulness of the property, thus resulting in a compensable taking unnecessarily costly to the state and unnecessarily detrimental to the landowner. This might be especially true of such things as fences and buildings. We are not persuaded that Traill has met its burden of establishing that the classification bears no reasonable relation to the legislative purpose of regulating land use along highways to promote sound and efficient highway planning, safety, and the public welfare without effecting compensable takings of property.

■ Traill contends that §§ 24–01–42 and 24–01–43, N.D.C.C., "unconstitutionally delegate power to the highway commissioner to arbitrarily interfere with private property rights without due process of law" because they "provide no standards to limit the highway commissioner's power to refuse consent nor do they contain any time limitations or other safeguards to protect the private property interests affected."

Because Traill did not seek the Commissioner's consent, the lack of explicit standards or safeguards in the statutes[3] has had no effect on Traill. In *Detlaff v. Board of County Comm'rs of Ward*

---

3. Clear legislative standards may not be necessary if there are other adequate procedural safeguards. *See Trinity Medical Center v. North*

*Dakota Board of Nursing,* 399 N.W.2d 835 (N.D. 1987).

*County,* 136 N.W.2d 835, 839 (N.D.1965), this court said:

> "The respondents have not followed the procedure provided in the zoning resolution for a building permit, and until such application for a building permit has been presented to and rejected by the Board of County Commissioners the respondents cannot say that they have been harmed or adversely affected by the particular feature of the resolution alleged to be in conflict with the Constitution."

Because Traill did not request the Commissioner's consent, it cannot say that it has been harmed or adversely affected by the lack of standards or safeguards asserted to be unconstitutional and accordingly, we deem it unnecessary to determine this issue.

The judgment is reversed.

GIERKE, and MESCHKE, JJ., and SCHNEIDER, District Judge, concur.

SCHNEIDER, District Judge, sitting in place of LEVINE, J., disqualified.

VANDE WALLE, Justice, concurring in result.

I concur in the result reached by the majority opinion reversing the judgment. I have doubts concerning the standing of Traill to challenge Sections 24–01–42 and 21–04–43, N.D.C.C., or whether it has waived the right to question the constitutionality of the statutes by its failure to raise the constitutional question at the earliest opportunity. I would therefore prefer to leave for another day the issues of whether the statutes constitute reasonable land-use regulations not requiring compensation and whether or not those statutes violate constitutional guarantees of equal protection. I recognize that the issues of standing or waiver were addressed only peripherally by the parties and therefore not at all by the majority opinion.

As the majority opinion observes, Traill obtained the easements from private landowners in 1971 and 1972. Traill did so without requesting the Commissioner's consent for the location of the water line except where the line crossed under the highway. The facts were submitted to the trial court by stipulation of the parties and we are left to speculate whether the failure of Traill to request the permission of the Commissioner was due to its belief that the statute is unconstitutional; that it was simply unaware of the statutory requirement; or that it was aware of the statutory requirement but chose to not request permission in the belief that it would not be granted and that if the occasion arose in which the highway was to be widened the statute would be challenged as to its constitutionality at that time.

My concern as to Traill's position in this case is perhaps exemplified by the discussion in the majority opinion of the first issue, i.e., whether the statutes involve a reasonable regulation or a taking. The opinion appears to address the issue from that of the landowner and concludes that because the statutes do not prohibit all or substantially all reasonable uses of the regulated property as a whole, decisions such as *First English Evangelical Lutheran Church v. Los Angeles County,* 482 U.S. ——, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), do not apply. Although I might agree with that conclusion insofar as the landowner's position is concerned, it is not the landowner but rather the easement owner who is challenging the statutes. The statute does prohibit all use by utility easement owners in the area proscribed.[1]

But Traill cannot invoke the rights of the farmer-landowner from whom the easement was acquired. 16 C.J.S., *Constitu-*

---

1. Presumably there would be little question that Traill was entitled to compensation if it acquired an easement from a private landowner prior to the time Section 24–01–42 was enacted and was subsequently required to remove its water lines. On the other hand, where utility lines are installed on public rights-of-way, the State may order the utilities to relocate such facilities at the expense of the utilities. *Northwestern Bell Telephone Company v. Wentz,* 103 N.W.2d 245 (N.D.1960). North Dakota has, however, allowed reimbursement for those expenses. *Id.;* Sec. 21–01–41, N.D.C.C. Here, the easement was acquired prior to the time the State acquired any right-of-way.

**350**

*tional Law,* § 66(a). As an example, in its brief Traill argues that "The initial construction of a water line will necessarily prevent farmers from cultivating crops from the edge of the highway right of way to the location of the water line during construction. If the line is built 40 or 50 feet further into each farmer's field, this may result in substantial crop loss. Furthermore, additional crop loss will result whenever the water line is in need of maintenance as equipment must be moved deeper into the farmer's field. Placement of utility poles create even more problems for farmers who must farm around these obstructions. As a consequence, farmers are reluctant, if not totally unwilling, to grant easements to utilities except along the borders of their fields."

However, a party may not challenge the constitutionality of a statute on the ground that someone other than itself might be harmed. E.g., *First Bank of Buffalo v. Conrad,* 350 N.W.2d 580 (N.D.1984). Traill may not, therefore, raise the concerns of the farmer-landowners of this State who are not parties to this action, particularly the argument relative to utility poles since the easements in question involved buried water lines.

Although the argument may appear to be tailored to Traill's concerns, i.e., that farmers are reluctant to grant easements to utilities except along the borders of their fields and this statute would force Traill to acquire easements farther into fields when farmers are reluctant to grant easements to utilities except along the borders of their fields, that argument is not persuasive in this instance because we do not know if the Commissioner would have denied the permits if Traill had requested them pursuant to the statute. Furthermore, Traill, as the result of legislative enactment, has the power of eminent domain. Sec. 32–15–02, N.D.C.C. In any event, it appears Traill's argument in this regard is more properly addressed to the legislative branch of government.

Nor is Traill in a position to argue, as it does, that the statutes deny due process because of lack of adequate standards lim-

iting the Commissioner's discretion. Traill did not apply for permission to install the line and therefore the standards or lack thereof limiting the Commissioner's discretion in granting or denying the permit are not significant to Traill's status in this case. See *State Dept. of Nat. Resources v. Olson,* 275 N.W.2d 585 (Minn.1979).

Although this court has previously held that one who seeks to enjoy the benefits under a law cannot, in the same proceedings, question the constitutionality of the Act under which he so proceeds, even in the event that benefits are ultimately denied [*Quist v. Best Western Intern., Inc.,* 354 N.W.2d 656 (N.D.1984)], that holding should not apply where the statute, as here, creates a requisite to certain action such as the installation of an underground water line within 100 feet of the center of a highway. The statute prohibits the installation of a line without the approval of the Commissioner. Not only should a party who requests permission and is denied be entitled to challenge the constitutionality of that law at that time, such action should be a requisite to a challenge. The general rule is that a constitutional question must be raised at the earliest opportunity or it will be deemed waived. 16 Am.Jur.2d, *Constitutional Law,* § 206. The proper time to raise the issue was at the time the lines were installed contrary to the statute.

SCHNEIDER, District Judge, concurs.