Peter A. QUIST, Securities Commissioner of the State of North Dakota, Appellee,

v.

**BEST WESTERN INTERNATIONAL, INC., an Arizona nonprofit corporation, Appellant.**

**Civ. No. 10571.**

Supreme Court of North Dakota.

July 18, 1984.

Kermit Edward Bye (argued), of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo; and Jerry C. Bonnett, Phoenix, Ariz., of counsel, of Evans, Kitchel & Jenckes, Phoenix, Ariz., for appellant.

Peter A. Quist, Securities Commissioner, State Capitol, Bismarck, for appellee.

GIERKE, Justice.

This is an appeal from a judgment of the District Court of Burleigh County affirming an order of the North Dakota Securities Commissioner, which required the appellant, Best Western International, Inc., an Arizona corporation, to refrain and desist from the further offer or sale of membership agreements in North Dakota until the offer or sale of these agreements has been registered with the Securities Commissioner, pursuant to the North Dakota Franchise Investment Law, Chapter 51–19, N.D.C.C.

This action was begun by way of a declaratory judgment action commenced by Best Western to determine its status under the North Dakota Franchise Investment Law (FIL). The district court in which the action was filed concluded that a determination of Best Western's status was a matter to be pursued through the administrative processes available to the Commissioner. The Commissioner then commenced his own action seeking an order requiring that Best Western register its offers of membership agreements in compliance with the requirements of the FIL. Best Western's answer alleges that the FIL was inapplicable, or, alternatively, that Best Western was exempt from its provisions. Best Western further alleges that if its activities were within the contemplation of the FIL and not exempt, the law itself was unconstitutional as violative of Article I, §§ 21 and 22 of the North Dakota Constitution, and the Commerce, Due Process, and Equal Protection Clauses of the United States Constitution. Best Western also alleges that the broad authority delegated to the Commissioner by the FIL rendered it facially unconstitutional.

On June 24, 1982, a hearing was conducted before Mr. Douglas L. Johnson, hearing officer, pursuant to § 28–32–05, N.D.C.C. The hearing officer issued his proposed findings of fact, conclusions of law, and order on March 2, 1983. The hearing officer concluded that the agreements between Best Western and its members were "franchises" as defined in § 51–19–02(5), N.D.C.C.; that Best Western had offered or sold franchises in North Dakota in violation of the registration provisions of § 51–19–03, N.D.C.C.; that Best Western did not qualify for the statutory exemptions from registration; that Best Western had not been exempted by rule from registration; and that the Commissioner had not applied the FIL in a discriminatory manner. The Securities Commissioner, by his order dated March 3, 1983, adopted the proposed findings of fact and conclusions of law, and ordered Best Western to refrain and desist from offering memberships in its organization until the offers are registered with the Securities Commissioner, pursuant to the provisions of the FIL.

Best Western then appealed from the Commissioner's order to the District Court of Burleigh County, pursuant to § 28–32–15, N.D.C.C. The district court affirmed the Commissioner's order and judgment was entered accordingly. From that judgment, Best Western appeals.

Best Western raises three issues on appeal:

1. Does Best Western's operation constitute a franchise as contemplated by the North Dakota Franchise Investment Law?

2. Does the application of the registration provisions of the Franchise Investment Law violate Best Western's rights under Article 1, §§ 21 and 22 of the North Dakota Constitution and the Commerce, Due Process, and Equal Protection Clauses of the United States Constitution?

3. Is the Franchise Investment Law facially unconstitutional because it delegates broad discretionary authority to the Commissioner without establishing proper standards or guides for the exercise of that discretion?

We will discuss these issues in the order listed above.

### I

The material facts of this case are not in dispute. Evidence regarding the structure and operation of the Best Western organization was presented by Best Western itself and it was on that evidence that the Commissioner based his determination.[1] Best Western nevertheless asserts that the Legislature did not intend that cooperative associations, such as Best Western, should be subject to registration under the FIL.

It is Best Western's position that the statutory definition of "franchise" is ambiguous, and that, when properly interpreted in light of its legislative history and underlying policy, the term "franchise" does not include cooperative marketing associations. This argument is outlined in Best Western's brief as follows:

"The definition of 'franchise' is manifestly circular. Under the first element of the test, a marketing plan or system must be prescribed in substantial part *by a franchisor*. A 'franchisor', on the other hand, is 'a person who grants a franchise'. § 51–19–02(8). Neither the term 'franchise' nor the term 'franchisor' has a self-evident meaning; one cannot be

fully and unequivocally defined merely by referring to the other. Hence, some analysis of the legislative intent must be undertaken to arrive at what the Legislature meant by 'franchisor'.

The statutory definition of "franchise" is found in § 51–19–02(5)(a), N.D.C.C., as follows:

"5.a. 'Franchise' means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:

"(1) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor;

"(2) The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

"(3) The franchisee is required to pay, directly or indirectly, a franchise fee."

A "franchise fee" is defined in § 51–19–02(6), N.D.C.C., as:

"... any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including, but not limited to, any such payment for such goods or services...."

In construing the above statute we are guided by §§ 1–02–02, 1–02–03, and 1–02–05, N.D.C.C., which provide:

"*1–02–02. Words to be understood in their ordinary sense.*—Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained.

"*1–02–03. Language—How construed.*—Words and phrases shall be construed according to the context and

---

1. On this appeal, Best Western has raised no objection to the proposed findings of fact submitted by the hearing officer and adopted by the Commissioner. The findings of fact are, therefore, not set forth herein.

the rules of grammar and the approved usage of the language. Technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law, or as are defined by statute, shall be construed according to such peculiar and appropriate meaning or definition.

"*1–02–05. Construction of unambiguous statute.*—When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

 The primary purpose of statutory construction is to ascertain the intent of the Legislature, *McCroskey v. Cass County*, 303 N.W.2d 330 (N.D.1981), and that intent must first be sought in the language of the statute. *State v. Nordquist*, 309 N.W.2d 109 (N.D.1981); *McCroskey v. Cass County, supra.* Furthermore, a statute must be viewed as a whole, with a view at arriving at the Legislature's intent. *Horst v. Guy*, 219 N.W.2d 153 (N.D.1974). Legislative intent is presumed to be clear from the face of the statute. *Morton County v. Henke*, 308 N.W.2d 372 (N.D.1981); *Barnes County Ed. Ass'n v. Barnes County Special Ed. Bd.*, 276 N.W.2d 247 (N.D.1979). Resort may be had to extrinsic aids in the event that the statutory language is ambiguous. *Morton County v. Henke, supra.*

 Applying the rules of statutory construction set forth above, we cannot agree with Best Western's contention that the statutory definition of "franchise" is ambiguous. Under the plain meaning of the statute, a "franchise" is simply a contract or agreement between two parties by which one party grants and the other party receives certain statutorily delineated rights and obligations. In return, the grantor, or "franchisor", receives a "franchise fee". The statute contains no exception for cooperative marketing agreements.

Furthermore, it is apparent that the statutory definition of "franchise", when viewed within the context of Chapter 51–19, N.D.C.C., the Franchise Investment Law, as a whole, was intended to be a broad definition. The variety of business organizations and their purposes preclude a precise definition of the term. Instead, the Legislature has broadly defined "franchise" and provided certain exemptions from the definition. Of particular importance in the statutory scheme is the exemption found at § 51–19–04(3), N.D.C.C.:

"3. There shall be exempted from the provisions of section 51–19–03 any other transaction which the commissioner by rule exempts as not being comprehended within the purposes of the chapter and the registration of which he finds is not necessary or appropriate in the public interest or for the protection of investors."

By this method, the Legislature broadly defined the area of regulation and authorized the Commissioner to determine on a case-by-case basis whether or not the protection of the public requires registration of a particular business arrangement. The administration of the FIL is an area where there is an obvious need for agency expertise. The statutory scheme provided in the FIL is common to such situations where the Legislature cannot be expected to provide for regulation of the public interest on a case-by-case basis. In this case, the Commissioner has refused to exempt Best Western from the statutory definition.

Section 51–19–16(8), N.D.C.C., provides that:

"8. Every final order, decision, license, or other official act of the commissioner is subject to judicial review in accordance with chapter 28–32."

Chapter 28–32, N.D.C.C., is the "Administrative Agencies Practice Act". Section 28–32–19 provides for appeal to the district court from the determination of an administrative agency. The section further provides, in pertinent part, that:

"... the court shall affirm the decision of the agency unless it shall find that any of the following are present;

"1. The decision or determination is not in accordance with the law.

"2. The decision is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions and decision of the agency are not supported by its findings of fact...."

■ Section 28–32–21, N.D.C.C., provides for supreme court review of the judgment of the district court in an appeal from a decision of an administrative agency. Our scope of review is identical to that of the district court. Our review is limited to the evidence contained in the record of the administrative hearing. *Barnes County v. Garrison Diversion Conservancy District*, 312 N.W.2d 20 (N.D.1981); *North Dakota Real Estate Commission v. Allen*, 271 N.W.2d 593 (N.D.1978).

■ Applying these rules to the present case, we conclude that the Commissioner's conclusions of law are supported by the findings of fact; and that the Commissioner's final determination is in accordance with the law. Best Western has not complained that the Commissioner's findings of fact are not supported by a preponderance of the evidence; that the provisions of the Administrative Agencies Practice Act have not been complied with; or that the Commissioner's rules and procedures have not afforded Best Western a fair hearing. We therefore proceed to the constitutional issues raised by Best Western.

II

In the administrative hearing and on appeal to the district court, Best Western alleged that the FIL unconstitutionally discriminated against retailer-owned marketing cooperatives such as Best Western and further alleged that the delegation of au-thority to the Commissioner was without intelligible guidelines and is therefore an unconstitutional delegation of legislative power.

Before proceeding to these issues we must first address an issue raised by the Commissioner: that is, whether or not Best Western has waived the right to challenge the constitutionality of the FIL by virtue of its own conduct. Discussion of this issue requires some background concerning the events leading to this appeal.

In 1980, David S. Maring, a Fargo attorney, inquired of the Securities Commissioner's office if Best Western was registered to offer and sell franchises in North Dakota. Colleen Schweigert, the franchise examiner at that time, sent a standard form inquiry-complaint letter to Best Western on March 14, 1980. Enclosed in that letter was a list of items which Best Western was asked to provide.

On March 24, 1980, Harold J. Bliss, Jr., an Arizona attorney, wrote to Ms. Schweigert and indicated that he would be responding to her letter of March 14, 1980, on behalf of Best Western. Mr. Bliss then submitted Best Western's response by letter dated April 17, 1980. The portion of that letter pertinent to the issue under consideration states as follows:

"... If it is your opinion, based upon review of the enclosed, that Best Western's business is a franchise under the North Dakota law, we request that an exemption or no-action letter be issued under Section 51–19–04.3, North Dakota Century Code...."

Approximately one month later, Ms. Schweigert wrote to Mr. Bliss and informed him of the conclusions which had been reached following a review of the material submitted on behalf of Best Western. She also stated that:

"With reference to your request that an exemption be issued under Section 51–19–04(3), N.D.C.C., this office is extremely reluctant to open this heretofore closed door without very serious consideration of all aspects of a plan of busi-

ness, with special emphasis on what measures are taken to protect the investment of potential franchisees. Therefore, we hereby extend to Best Western International, Inc., the opportunity to justify the creation of an exemption by rule for the franchise it offers."

On June 26, 1980, Mr. Bliss advised Ms. Schweigert that he had been informed by Best Western that it desired to pursue an exemption by rule. Mr. Bliss requested advice on the information needed to determine whether the exemption should issue.

Ms. Schweigert's response, in a letter dated August 28, 1980, informed Mr. Bliss that the Commissioner's office was

"... very reluctant to exempt by rule any transactions which would otherwise be subject to the registration provisions of the franchise law, thus opening a door of escape to companies whose methods of business require regulation. It is our very strong inclination to require Best Western International to register immediately...."

Ms. Schweigert added, however, that the office would take no action until Best Western had had an opportunity to respond.

Best Western then submitted to the Commissioner's office a formal request for an exemption ruling, pursuant to § 51–19–04(3), N.D.C.C.

The Commissioner's office responded to the formal request for exemption by letter of January 21, 1981, in which the Commissioner indicated that his office would be willing to initiate a rule-making procedure on the condition that Best Western make rescission offers to all North Dakota members who had bought memberships after July 1, 1975, the date the franchise law became effective. By letter of February 4, 1981, Jerry C. Bonnett, who had replaced Mr. Bliss as Best Western's counsel, informed the Commissioner's office that Best Western had begun evaluating the suggestions contained in the Commissioner's response to Best Western's formal request for exemption.

Shortly thereafter, Best Western, rather than tendering rescission offers to its North Dakota members, requested of the Commissioner an interpretive opinion or "no-action" determination, pursuant to § 51–19–16(5), N.D.C.C., regarding the applicability of the North Dakota Franchise Investment Law to Best Western. The Securities Commissioner at that time was Mr. Arly Richau. By letter dated April 3, 1981, Mr. Richau informed Mr. Bonnett that although he felt that Best Western's arguments were meritorious, it would be inappropriate for him to render such an opinion during the pendency of a lawsuit involving Best Western and one of its former North Dakota members.

In 1981, Mr. Richau was succeeded as Securities Commissioner by Mr. Dale V. Sandstrom. Mr. Sandstrom took the position that he would not promulgate a rule to exempt Best Western from registration under the Franchise Investment Law. In his letter of June 22, 1981, to Mr. Bonnett, Commissioner Sandstrom stated his reasons for this refusal:

"I decline to promulgate a rule to exempt Best Western from registration under the Franchise Investment Law. I do not believe such promulgation would be in the public interest. I do not believe it would be in the public interest to exempt Best Western from the disclosure and other requirements of the Franchise Investment Law.

"Best Western is clearly a franchise. It clearly comes nowhere near the $10,-000,000 net worth exemption (an amount worth far less today than the value of $10,000,000 when the legislature set the figure).

"I have read with interest your contention that the legislature intended to exempt all cooperatives. I believe the comment that 'No cooperatives are franchised,' in the context made at the legislative committee session, was intended and understood to be the standard North Dakota legislative halls [*sic*] reference to *agricultural* cooperatives, and simply notes the fact that they do not operate as franchises (emphasis in original).

"I also note your comment that 'A statute's "spirit and purpose should prevail over its strict letter." ' While I believe that requiring registration of Best Western is consistent with the spirit and purpose of the law, I would note that North Dakota Century Code Section 1–02–05 provides:

" 'CONSTRUCTION OF UNAMBIGUOUS STATUTE.—When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.'

"I also note that other entities you mention, such as Holiday Inn, which are exempted from North Dakota registration because of the $10 million net worth provision, are required to make disclosures to potential investors by Federal Trade Commission requirements. On the other hand, Best Western, in the absence of state requirement, would not be required to make such disclosure.

"I find nothing in the organization form of a nonprofit, retailer-owned cooperative that guarantees freedom from franchisee victimization.

"For these reasons, jointly and severally, I decline to exercise my rulemaking power in this regard."

It is the position of the present Commissioner, Mr. Peter A. Quist, that Best Western waived its right to challenge the constitutionality of the FIL when it attempted to seek "benefits" under the statute, through its formal request for exemption and its request for a "no-action" letter. In short, the Commissioner contends that Best Western should not be allowed to question the constitutionality of the authority delegated to him by the Legislature after petitioning him to exercise that very authority.

Best Western's response to the Commissioner's contention is that:

*First,* Best Western's conduct does not support an inference of clear, voluntary abandonment of constitutional rights;

*Second,* Best Western neither sought nor received any benefit or advantage conferred by the FIL;

*Third,* the waiver rule urged by the Commissioner is not a rule at all, but is honored mainly in the breach; and

*Fourth,* all efforts by Best Western to convince the Commissioner that he should not enforce the FIL against Best Western were compelled by the threat of administrative or judicial penalty.

The law in North Dakota regarding waiver of the right to assert the unconstitutionality of a statute is clear. The Commissioner places his principal reliance upon *City of Fargo v. Annexation Review Commission,* 123 N.W.2d 281 (N.D.1963). In that case the City of Fargo attempted to annex adjacent properties. The governing body of the city adopted a resolution including these properties within the city limits. Various owners of the annexed property appealed to the Annexation Review Commission from the action of the City. After a hearing, the Review Commission decided that the greater portion of the annexed properties could not be annexed. The City then applied to the district court for a writ of certiorari. The district court entered judgment adverse to the City and the City appealed to this court. One of the City's contentions was that the statute providing for a hearing and decision by the Annexation Review Commission was unconstitutional as an unlawful delegation of judicial power. In holding that the City had waived its right to assert the constitutional question, we stated in *City of Fargo v. Annexation Review Commission, supra* 123 N.W.2d at 285, that:

"At no time did the City question the authority of the review commission to hear and determine the question of the use which was being made of the land in question, which land the City is attempting to annex. Had the review commission determined this question of use in favor of the City, no question of the authority of the commission would have been raised by the City. After the commission rendered an adverse decision, the City cannot, for the first time, question the constitutionality of the Act under which the commission was acting. In

other words, a party who has submitted to the jurisdiction of the commission, seeking to obtain a decision in his own favor, cannot, after an adverse decision, question the right of the commission to render such decision on the ground that the Act authorizing the hearing before the commission is unconstitutional because of an alleged unlawful delegation of judicial authority. This court has repeatedly held that a party who seeks to enjoy benefits under a law cannot thereafter, in the same proceeding, question the constitutionality of the Act."

In *Benson v. North Dakota Workmen's Comp. Bureau*, 250 N.W.2d 249 (N.D. 1977), we held that an employee who filed a claim with the Workmen's Compensation Bureau and thus submitted to its jurisdiction could not question the constitutionality of the agricultural exclusion from the Compensation Act for the first time on appeal to the district court. We also stated, in *Benson, supra* 250 N.W.2d at 250, that:

"It is questionable whether one who seeks to enjoy the benefits under a law can thereafter, in the same proceeding, question the constitutionality of the Act under which he proceeds. *City of Fargo v. Annexation Review Commission*, 123 N.W.2d 181 (N.D.1963)."

In *Newman Signs, Inc. v. Hjelle*, 268 N.W.2d 741 (N.D.1978), *appeal dismissed* 440 U.S. 901, 99 S.Ct. 1205, 59 L.Ed.2d 449 (1979), a challenge was brought to the constitutionality of the North Dakota Highway Beautification Act. In that case we held that the plaintiff was estopped from attacking the constitutionality of the rule and regulation of the Highway Commissioner. We also stated, in *Newman, supra* 268 N.W.2d at 750, that:

"... one who seeks and obtains the advantage of a statute is estopped from challenging the constitutionality of that statute. The rule goes back at least to 1893, where we said in *Minneapolis, St. P. & S. Ste. M. Ry. Co. v. Nester*, 3 N.D. 480, 483, 57 N.W. 510, 512 (1893):

" 'He went before the commissioners, and sought the benefit of the law.

Subsequently, he voluntarily chose to pursue a remedy provided by the statute in preference to a common-law remedy that was open to him. By these acts he has waived any benefit of the constitutional provision. Such should be the law in reason, and such is the law upon authority. Cooley, Const. Lim. 216; End.Interp.St. § 537, and cases there cited.' "

The plaintiff, in *Frieh v. City of Edgeley*, 317 N.W.2d 818 (N.D.1982), challenged the legality of a city ordinance under which the City sought bids for the collection of garbage within the City. The trial was held in the district court and the court determined that the defendant had fully participated in the bidding process conducted by the City and never raised any claim of irregularity or lack of authority on the part of the City and, in fact, registered no complaint until after the City had awarded the contract to the plaintiff's competitor. On appeal to this court we stated that we have "repeatedly held that a party seeking to enjoy the benefits under a law cannot thereafter, in the same proceedings, question the constitutionality of the act". We then held that the plaintiff had waived any right to object to the legality of the City's action, or the legality of the law under which the City acted, notwithstanding the fact that he had received no benefit.

As the foregoing cases attest, it is clear that in North Dakota one who seeks to enjoy the benefits under a law cannot, in the same proceedings, question the constitutionality of the act under which he proceeds. This is so even in the event that benefits are ultimately denied. In this case, Best Western petitioned the Commissioner to exercise the discretionary authority delegated to him by the Legislature in the FIL. Best Western actively sought a "benefit" through the exercise of the Commissioner's discretion. Because Best Western actively sought the exercise of the Commissioner's discretion, we conclude that Best Western has waived the right, in this proceeding, to question the constitutionality of the statute which is the source

of the Commissioner's discretionary authority.

The same does not hold true in regard to Best Western's remaining constitutional issue by which Best Western asserts that the enforcement of the FIL against Best Western is unconstitutionally discriminatory. Such a constitutional infirmity is not apparent from the face of the statute and arose only after the Commissioner, in the exercise of his discretion, determined that Best Western would not be exempted from the registration provisions of the FIL. Therefore, Best Western did not waive the right to question the constitutionality of the application of the registration provisions of the FIL against Best Western.

### III

Best Western contends that the North Dakota Legislature did not intend that the FIL regulate agricultural marketing cooperatives and that there is no rational basis for distinguishing between agricultural cooperatives and retailer-owned marketing cooperatives such as Best Western. Best Western also asserts that even if the Legislature did not intend to draw such a distinction, it is the policy of the Commissioner not to apply the FIL to agricultural cooperatives. In challenging the constitutionality of that distinction, Best Western must bear the burden of establishing that this classification bears no reasonable relation to a conceivable legislative purpose. *Newman Signs, Inc. v. Hjelle, supra* 268 N.W.2d at 758. As noted earlier in this opinion, our review is limited to the evidence contained in the record of the administrative hearing.

To begin, as we have already noted, the Franchise Investment Law does not exempt marketing cooperatives in general, or, more particularly, agricultural cooperatives, from its registration provisions. Second, it is the Commissioner's position, as stated in his brief "that cooperatives, whether categorized as marketing, agricultural, or otherwise, are not exempt from the FIL if they come within the definitional provisions thereof". The record reveals no evidence to establish that the Commissioner's actions are contrary to this policy. Third, even if a separate classification for agricultural cooperatives were to be delineated, either by the statute or by exemption by rule, the record fails to establish that such a classification would bear no reasonable relation to a conceivable legislative purpose.

In sum, the record is simply insufficient to establish discriminatory intent on the part of the Legislature or the Commissioner and equally insufficient to establish discriminatory effect. Neither the statute nor the Commissioner, by rule, has carved out any exemption for cooperatives, agricultural or otherwise.

Closely related to the issue discussed above, is Best Western's contention that the Commissioner has selectively enforced the FIL. It is conceded by the Commissioner that his office has not attempted to force any marketing cooperative, except Best Western, to register under the FIL. It is also apparent, however, that a number of marketing cooperatives have voluntarily chosen to register. The mere fact that the Best Western is the only cooperative association which has been "forced" to register is not sufficient to establish discriminatory enforcement by the Commissioner's office. At the administrative hearing, the franchise examiner testified that not only had a number of cooperative associations registered with the Commissioner's office, but she was unaware of any which had not registered, with the exception of Best Western. Furthermore, the record does not reveal whether any cooperative associations which fall within the definitional provisions of the FIL have not registered. The evidence contained in the record on appeal is simply insufficient to sustain Best Western's contention.

For the reasons expressed in this opinion, the judgment is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE, and SAND, JJ., concur.