**PUKLICH & SWIFT, P.C., Appellee,**

v.

**STATE of North Dakota, By and Through the STATE TAX COMMISSIONER, Appellant.**

**Civ. No. 10660.**

Supreme Court of North Dakota.

Dec. 19, 1984.

Eaton, Van de Streek & Ward, Minot, for appellee; argued by Michael Ward, Minot.

Carla J. Smith, Asst. Atty. Gen., Bismarck, for appellant; appearance by Albert R. Hausauer, Sp. Asst. Atty. Gen., Bismarck.

ERICKSTAD, Chief Justice.

The State, by and through the State Tax Commissioner, appeals from a district court judgment which reversed the Commissioner's assessment against Puklich & Swift, P.C. We reverse.

Puklich & Swift is an accounting firm which operated as a partnership under various names during the years 1977 to 1980. The firm filed Business and Corporation Privilege Tax returns for the years 1977,

1978, 1979, and 1980, but did not include guaranteed payments made to partners in its reported net income.[1] The Tax Commissioner conducted an audit of Puklich & Swift's Business and Corporation Privilege Tax returns for those years and assessed additional taxes based upon the omitted guaranteed payments. Puklich & Swift paid the 1977 assessment under protest and objected to all further assessments.

An administrative hearing was held and the Commissioner determined that the guaranteed payments to partners were includible in the partnership's net income for the Business and Corporation Privilege Tax. The Commissioner denied Puklich & Swift's request for a refund of 1977 taxes and upheld the assessments for 1978, 1979, and 1980.

Puklich & Swift appealed the Tax Commissioner's decision to the district court. The district court held that the statute setting out the provisions of the Business and Corporation Privilege Tax, Section 57–38–66, N.D.C.C., failed to define net income and that the rules promulgated by the Commissioner improperly attempted to correct the legislative omission. Concluding that there was no statute which authorized imposition of the assessments, the court reversed the Commissioner's decision. The Commissioner has filed this appeal.

This case turns upon the interpretation of Section 57–38–66(1), N.D.C.C., which for the years in question provided:

*"57–38–66. Business and corporation privilege tax.*

"1. Each individual, estate, or trust required to file an income tax return pursuant to chapter 57–38 and, notwithstanding the provisions of section 57–38–08, each partnership required to file a partnership return pursuant to subsection 2 of section 57–38–42 who derives income from the operation of a business, trade, or profession, other than as an em-

---

1. "Guaranteed payments" are payments made by a partnership to a partner for service or use of capital, to the extent such payments are de-termined without regard to partnership income. *See* 26 U.S.C. § 707(c); 26 C.F.R. § 1.707–1(c) (1984).

ployee, shall pay a tax for the privilege of doing business in this state of one percent of the net income in excess of two thousand dollars derived from the operation of such business, trade, or profession, which tax shall be a separate tax that is levied in addition to the taxes provided for in chapter 57–38. For the purposes of this subsection, the term 'net income' means the gross income derived from such business, trade, or profession less the expenses of carrying on such business, trade, or profession, as computed for federal income tax purposes pursuant to the provisions of the United States Internal Revenue Code of 1954, as amended; provided that in computing gross income and net income there shall not be taken into account any gain or loss from the sale or exchange of property used in the operation of a business, trade, or profession but not held for sale in the regular course thereof; provided, further, that the net income of an individual shall not include his distributive share as a partner in the earnings of any partnership on which the partnership is required to apply the tax rate provided for in this subsection."

The Business and Corporation Privilege Tax was repealed by the 1979 Legislature,

effective January 1, 1981. 1979 N.D.Sess. Laws, Ch. 612, § 3.

Section 57–38–66 was amended by the 1973 Legislature. Prior to 1973, individual partners were each required to file a Business and Corporation Privilege Tax return and were separately liable for the tax based upon their individual net income from the partnership. Because of administrative difficulties in collecting the tax, particularly for national partnerships which had income in North Dakota, the Tax Department supported House Bill 1202 in the 1973 Legislature, which changed the tax-paying entity from the individual partner to the partnership. In changing the statute to make the partnership liable for the tax, however, the Legislature created a problem regarding treatment of guaranteed payments to partners.

■ For purposes of the Business and Corporation Privilege Tax, "net income" is defined in Section 57–38–66(1), N.D.C.C., as "gross income derived from such business, trade, or profession less the expenses of carrying on such business, trade, or profession, as computed for federal income tax purposes pursuant to the provisions of the United States Internal Revenue Code of 1954, as amended." [2] Under the Internal Revenue Code, guaranteed payments are treated as a deductible business expense to the partnership but as ordinary income to the partner.[3] Thus, at first glance it would

**2.** The Commissioner argues that the language "as computed for federal income tax purposes pursuant to the provisions of the United States Internal Revenue Code" refers back to the term "net income." Because the Internal Revenue Code does not define "net income," the Commissioner contends that the statute is ambiguous and that it was within his authority to adopt rules to clarify the statute.

We do not agree with this reasoning. Rather, it appears clear that the above-quoted language refers back to "expenses," so that it is *expenses* which are to be computed according to the Internal Revenue Code. A review of the legislative history of 1969 Senate Bill 137, which first enacted the Business and Corporation Privilege Tax and included the above-quoted language, supports this conclusion.

**3.** The relevant statute is 26 U.S.C. § 707(c):

"*Guaranteed payments.* To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses)."

The relevant regulation implementing this section provides, in pertinent part:

"*(c) Guaranteed payments.* Payments made by a partnership to a partner for services or for the use of capital are considered as made to a person who is not a partner, to the extent such payments are determined without regard to the income of the partnership. However, a partner must include such payments as ordinary income for his taxable year within or with which ends the partnership taxable year

appear that when the Legislature made the partnership the taxpaying entity it also excluded guaranteed payments to partners from the "net income" which was subject to the tax.

A closer examination of the 1973 amendments reveals, however, that it was not the intent of the Legislature to exclude guaranteed payments from the net income subject to the tax. In addition to changing the entity responsible for the tax, House Bill 1202 also added the following proviso to the definition of net income in Section 57–38–66(1):

> "... provided, further, that the net income of an individual shall not include his distributive share as a partner in the earnings of any partnership *on which the partnership is required to apply the tax rate provided for in this subsection.*" [Emphasis added.]

If we were to interpret the statute as Puklich & Swift urge and hold that the partnership is not liable for the tax on guaranteed payments to partners, the proviso quoted above would require the individual partners to pay the tax on the guaranteed payments if we assume that the Legislature intended that someone should pay the taxes because such payments are a part of the distributive share of partnership earnings on which the partnership had not been required to apply the tax rate.

■ In interpreting Section 57–38–66(1), we are guided by several well-settled rules of statutory construction. The primary purpose of statutory construction is to ascertain the intent of the Legislature. *Quist v. Best Western International, Inc.,* 354 N.W.2d 656, 660 (N.D.1984); *Hall GMC, Inc. v. Crane Carrier Co.,* 332 N.W.2d 54, 64 (N.D.1983). The Legislature's intent in enacting a statute must first be sought from the language of the statute itself. *Quist, supra,* 354 N.W.2d at 660; *Hall GMC, supra,* 332 N.W.2d at 64. Furthermore, the statute must be considered as a whole, with a view toward

arriving at the legislative intent. *Quist, supra,* 354 N.W.2d at 660; *In Interest of Nyflot,* 340 N.W.2d 178, 181 (N.D.1983). Any interpretation of a statute must be reasonable and consistent with the intent of the Legislature, *Storbeck v. Oriska School District # 13,* 277 N.W.2d 130, 132 (N.D.1979), and conflicting *pari materia* provisions are to be reconciled, if possible. *State ex rel. Olson v. Bakken,* 329 N.W.2d 575, 578 (N.D.1983).

■ Applying these rules to Section 57–38–66(1), N.D.C.C., we conclude that guaranteed payments to partners are to be included in partnership net income for purposes of the Business and Corporation Privilege Tax. It is clear from the face of the statute that the intent of the Legislature in enacting the 1973 amendments was to make the partnership the taxpaying entity, rather than the individual partners. The proviso to the definition of net income is intended to prevent double taxation, and further evidences an intent that the partnership, rather than the partners, is responsible for the tax. To hold that the partnership is liable for the portion of the tax based upon partnership net income not including guaranteed payments to partners, and that the individual partners are liable for the portion of the tax based upon such guaranteed payments, would frustrate the purpose of the 1973 amendments to alleviate the administrative burden on the Tax Department. We cannot conceive that the Legislature intended to place additional burdens upon the Tax Department by requiring collection of a portion of the tax from the partnership and a portion from the individual partners. We believe such an interpretation of the statute would be unreasonable and inconsistent with the intent of the Legislature. *Storbeck, supra,* 277 N.W.2d at 132.

Likewise applying a reasonable construction we are not persuaded that the Legislature intended to totally exempt guaranteed payments from the Business and Corpora-

in which the partnership deducted such payments as paid or accrued under its method of accounting."

26 C.F.R. § 1.707–1(c) (1984).

tion Privilege Tax. This conclusion is supported by a review of the legislative history of the 1973 amendments to Section 57–38–66(1). The fiscal note [4] attached to House Bill 1202 indicated that there was to be no substantial loss of revenues as a result of the bill,[5] and a Tax Department spokesman explained in testimony before the House Finance and Taxation Committee that the only intended fiscal impact of the bill was a decrease in the amounts collected under the $20 minimum tax in effect at that time.[6] We therefore conclude that the Legislature did not intend that guaranteed payments to partners were to be excluded from the Business and Corporation Privilege Tax.

We conclude that guaranteed payments to partners are to be included in a partnership's net income for purposes of the Business and Corporation Privilege Tax pursuant to Section 57–38–66(1), N.D.C.C. The judgment of the district court is reversed and the decision of the State Tax Commissioner is reinstated.

PEDERSON and GIERKE, JJ., concur.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.

VANDE WALLE, Justice, concurring specially.

I concur in the result reached in the majority opinion. I do so only because I believe the legislative intent of the statutes in question, as evidenced by the testimony before the House Finance and Taxation Committee and referred to in the majority opinion, was to make the partnership, rather than the individual partners, the taxpaying entity, and not to exclude guaranteed payments to partners from the Business and Corporation Privilege Tax entirely. In so concluding I do not agree that we can rely upon the precise wording of HB 1202 of the 1973 Legislative Assembly. That bill, as noted in the majority opinion, added the following provision to the definition of "net income" in Section 57–38–66(1), N.D. C.C.:

"... provided, further, that the net income of an individual shall not include his distributive share as a partner in the *earnings of any partnership* on which the partnership is required to apply the tax rate provided for in this subsection." [Emphasis supplied.]

Although the majority opinion places emphasis on the phrase "on which the partnership is required to apply the tax rate provided for in this subsection," that phrase refers back to "earnings of any partnership." As noted in footnotes 1 and 3 of the majority opinion, however, the Federal definition of "guaranteed payments" does not necessarily indicate that they are "earnings of any partnership." Guaranteed payments are determined without regard to partnership income. Therefore, it appears that guaranteed payments are not dependent upon earnings or income of the partnership. In fact, the partnership conceivably might have to borrow to make the payments. Thus the amendment to Section 57–38–66(1), N.D.C.C., as contained in HB 1202 would not necessarily imply that the guaranteed payments would be taxable to the individual partner if not taxable to the partnership, as suggested by the majority opinion. The distribution of guaranteed payments is not, as indicated by the majori-

**4.** Fiscal notes are required for all bills introduced in either house of the Legislative Assembly having an effect of $5,000 or more on revenues, expenditures, or fiscal liability of the state, except appropriation measures carrying specific dollar amounts. Senate and House Rules and Committees, Joint Rule 501 (1983). Because a fiscal note was required by rule for House Bill 1202, we conclude that it is appropriate to consider the fiscal note in attempting to ascertain legislative intent.

**5.** The fiscal note attached to House Bill 1202 estimated that the bill would reduce state revenues by $22,000 annually.

**6.** At that time, Section 57–38–66(1) provided that each taxpayer required to file a Business and Corporation Privilege Tax return was to pay a minimum tax of $20. Under prior law, each individual partner paid the $20 minimum; after the 1973 amendments, the partnership paid only one minimum. The minimum tax was repealed in 1975. 1975 Sess.Laws, Ch. 543, § 1.

ty opinion, necessarily a "distributive share of partnership earnings."

In fact, a reading of the statute could lead to the conclusion that the interpretation placed thereon by Puklich & Swift, P.C., is legally correct. An examination of the legislative history indicates otherwise. Although I am willing to adhere to that history to construe the statutory language, I recognize the persuasiveness of the contrary position.